RIDER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1906.)

No. 2,395.

1. STATUTES—CONSTRUCTION—TITLE.

The title of a legislative act cannot be so read into the body of it as to supply the absence of a substantive provision essential to the conferring of power and authority.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 288.]

2. CRIMINAL LAW—OFFENSES ON HOT SPRINGS RESERVATION—JURISDICTION OF COMMISSIONER.

Act April 20, 1904, 33 Stat. 187 [U. S. Comp. St. Supp. 1905, p. 365] entitled "An act conferring jurisdiction upon United States Commissioners over offenses committed in a portion of the permanent Hot Springs Mountain reservation, Ark.," clearly contemplates the creation of a new office of commissioner clothed with special jurisdiction over offenses committed on the reservation, prescribing the fees, that rules of procedure and practice for "said commissioner" shall be prescribed by the District Court, for appeals to such court, etc., but in the absence of any provision therein for the appointment of such commissioner is ineffective and the jurisdiction so conferred to try offenses cannot be exercised by any United States Commissioner within the district or elsewhere.

3. SAME—JURISDICTION OF DISTRICT COURT—APPEAL FROM JUDGMENT VOID FOR WANT OF JURISDICTION.

A United States District Court although having original jurisdiction of a criminal offense and also jurisdiction on appeal from the judgment of a commissioner cannot render a valid judgment of conviction on an appeal where the commissioner before whom the case was tried below on a complaint filed by a private individual was without jurisdiction of the subject-matter of the offense even though the defendant took the appeal and appeared and submitted to trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 2573.]

In Error to the District Court of the United States for the Eastern District of Arkansas.

R. G. Davies (G. W. Murphy, on the brief), for plaintiff in error. William G. Whipple, U. S. Atty., for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. Upon a sworn complaint by the United States District Attorney for the Eastern District of Arkansas, made before J. T. O'Hair, United States Commissioner for said district, the plaintiff in error, Dr. Thomas B. Rider, was arrested on the 18th day of May, 1905. This affidavit charged upon information and belief that said Rider, on the 16th day of May, 1905, was a practicing physician at Hot Springs, Ark., in the Western Division of said district; that he was not then and there a registered physician as provided by the act of Congress entitled "An act conferring jurisdiction upon United States Commissioners over offenses committed on a portion of the Hot Springs Mountain reservation, approved April 20, 1904" 33 Stat. 187, c. 1400 [U. S. Comp. St. Supp. 1905, p. 365], and was not then and there authorized to issue a permit to any patient or

person to take a bath in any of the bathhouses on said reservation; and that said Rider knowingly, willfully, and unlawfully issued a permit to one Mattie Hancock, setting out the permit in hæc verba; that said permit consisted of directions to the said Mattie Hancock for taking a bath at the Superior Bath House; that in pursuance thereof she applied to said bathhouse and attempted to bathe therein; which bathhouse was then and there situated on said reservation.

The warrant issued by said O'Hair commanded the marshal to arrest and bring before him the said Rider. Instead of the marshal taking the prisoner before said O'Hair he took him before Edgar A. Nickels, who styled himself "a United States Commissioner for said district"; by whom he was tried and sentenced, the language of the judgment being:

"From the evidence of the said witnesses, it appearing to me, the commissioner, that the laws of the United States have been violated as charged in the complaint, and that there is a probable cause shown to believe the defendant guilty of the alleged offense, it was ordered that he pay a fine of $25."

From this judgment Rider appealed to the United States District Court for said district, where, on rehearing, he was again found guilty, and sentenced to pay a fine of $100 and costs. To reverse this judgment, Rider prosecuted his writ of error to this court. ·

At the threshold of every judicial proceeding arises the question of jurisdiction of the tribunal taking cognizance of the cause to proceed to judgment. "The question of jurisdiction is self-asserting in every case. It arises although the litigants are silent. Even their consent cannot authorize cognizance if fundamental grounds of jurisdiction are absent." Yocum v. Parker, 130 Fed. 771, 66 C. C. A. 80. The jurisdiction of said Nickels, before whom Rider was tried, is challenged by him in this court. Authority for his action is predicated by the United States Attorney, on the act of Congress approved April 20, 1904. c. 1400, 33 Stat. 187 [U. S. Comp. St. Supp. 1905, p. 365], entitled "An act conferring jurisdiction upon United States Commissioners over offenses committed in a portion of the permanent Hot Springs Mountain reservation, Ark." The first section of this act designates and defines the Hot Springs Mountain reservation, and limitations. The second section declares that said reservation "shall constitute a part of the Eastern United States Judicial District of Arkansas, and the District and Circuit Courts of the United States in and for said district shall have jurisdiction of all offenses committed within said boundaries." The third section makes provision for the protection of property, etc., within this reservation. The fourth section declares:

"That any person who shall, except in compliance with such rules and regulations as the Secretary of the Interior may deem necessary, and which he is hereby authorized and directed to make, enter or attempt to enter upon said described tract, take, or attempt to take, use or attempt to use, bathe in, or attempt to bathe in water of any spring located thereon, or without presenting satisfactory evidence that he or she (provided he or she is under medical treatment) is the patient of a physician duly registered at the office of the superintendent of the Hot Springs reservation as one qualified, under such rules which the Secretary of the Interior may have made or shall make, to prescribe the waters of the Hot Springs, shall be deemed guilty of a mis-

demeanor, and; upon conviction thereof. shall be subject to a fine of not more than one hundred dollars, and be adjudged to pay all costs of the proceedings: Provided, That no physician who shall engage in the solicitation of patronage through the medium of drummers, or otherwise, shall be or remain thus registered: And provided further, that if any person so bathing, or attempting to bathe, or so entering, or attempting to enter upon the described tract, shall have the permit of a physician, such physician shall be liable to the penalties of this section, unless he be regularly registered; and such person shall not be liable to the penalties of this section, unless it shall be made to appear that he knew, or had reason to believe, that the physician giving him such permit was not regularly registered."

The fifth section (33 Stat. 188 [U. S. Comp. St. Supp. p. 367]) applies to the punishment of offenses under municipal ordinances of the city of Hot Springs and the laws of the state of Arkansas. Section 6 of the act, which presents the principal controversy in this case, is as follows:

"That such commissioner shall have power, upon sworn complaint, to issue process in the name of the United States for the arrest of any person charged with the doing, otherwise than in compliance with the rules and regulations of the Secretary of the Interior, of any act with reference to the matters which the Secretary of the Interior in section four of this act is authorized to regulate, or in violation of such rules and regulations, or in violation of any provision of this act, or with any misdemeanor or other like offense the punishment provided for which does not exceed a fine of one hundred dollars to try the person thus charged, and if found guilty, to impose the penalty prescribed. In all cases of conviction an appeal shall lie from the judgment of said commissioner to the United States District Court for the Eastern District of Arkansas. The said United States District Court shall prescribe rules of procedure and practice for said commissioner in the trial of cases and with reference to said appeals."

As this section does not designate or create "such commissioner," naturally enough the word "such" would refer to some preceding section of the act defining the commissioner and prescribing the manner of his creation and the extent of his authority. There is not a reference to him or his office in any creative provision of the statute. It is conceded in the brief of counsel for the government that unless this casus omissus in the active power of the provisions of the act can be aided and eked out by reference to its title, there is nothing to designate who "such commissioner" is or how he derives his authority. Conceding that the American doctrine is that the title may constitute a part of the legislative act, and that preambles may be referred to to discover the mind of the Legislature, where the statute is obscure or ambiguous, it is as correct law to-day as when uttered by Mr. Justice Field, in Hadden v. Collector, 5 Wall. (U. S.) 107, 18 L. Ed. 518, that the title "is still considered as only a formal part; it cannot be used to extend or to restrain any positive provisions contained in the body of the act. It is only when the meaning of these is doubtful that resort may be had to the title, and even then it has little weight. It is seldom the subject of special consideration by the Legislature."

There is no authority to support the broad proposition that the title may be so read into the body of the act as to supply the absence of a substantive declaration essential to the creation of power and authority. Most certainly the title of this act cannot be resorted to for the purpose of showing that "such commissioner" is any United States

Commissioner, regardless of where located, when the whole trend of the enactment plainly indicates that it was the mind and purpose of Congress that this special jurisdiction was to be exercised by a special commissioner, who, from the inception to the close of the proceeding, was to exercise functions and powers quite apart from those conferred upon the well-known class of United States Commissioners. As the subject-matter is purely local, confined to the small territory reservation, and to a new and singular character of offenses, in the absence of express language to that effect in the enacting provisions it is incredible that Congress contemplated that this extraordinary and responsible jurisdiction might be exercised by any United States Commissioner in the District of Arkansas or elsewhere. A careful analysis of the whole act contradicts such contention.

In the latter part of said section 6 it is declared that:

"The said United States District Court shall prescribe rules of procedure and practice for said commissioner in the trial of cases and with reference to said appeals."

Evidently the framer of the statute did not have in mind the existing United States Commissioners in said district. If he had, what was the occasion or necessity for the District Court prescribing rules of procedure and practice for "said commissioner" in the trial of cases? The existing statutes, as well as the decisions of the courts, already defined the procedure and practice for the well known United States Commissioners. But as evidence that it was the purpose to create a new office, clothed with a special jurisdiction hitherto unknown to the law, it was provided that the District Court should first prescribe for him rules of procedure and practice in the conduct of trials. It is not shown affirmatively in this case that the District Court had ever formulated or prescribed any such rules for the government and direction of "such commissioner." On the contrary, it is the contention of the government that the functions of such commissioner were to be performed by a United States Commissioner, and, therefore, it would not be necessary that the court should prescribe any rules of procedure and practice for him. The seventh section (33 Stat. 188 [U. S. Comp. St. Supp. 1905, p. 368]) confers power on "said commissioner" to issue process for the arrest of any person charged with the commission of any criminal offense within said boundaries not covered by the provisions of section 6 of the act. It confers on him authority to bind over the defendant for trial to the District Court; provides how the offender may be bailed, and where committed in default of bail—provisions which would have been quite unnecessary in respect of United States Commissioners, whose duties in this respect are well defined by existing law and well-known practice. The eighth section, having in view the creation of a new office, with hitherto undefined powers and modes of procedure, directs that all process issued by the commissioner shall be directed to the marshal of the United States for the Eastern District of Arkansas. The ninth section directs:

"That the commissioner referred to in this act and the marshal of the United States and his deputies in the eastern district of Arkansas shall be paid the same fees and compensation as are now provided by law for like services in said district."

Why make such provision if it were contemplated that the existing United States Commissioners should exercise the jurisdiction, when the general statute specifically fixes the fees for like services in the district? Section 10 directs that all fees, costs, and expenses arising in cases under this act, and properly chargeable to the United States shall be certified, approved, and paid as are like fees, costs, and expenses in the courts of the United States. Why direct especially how such fees, etc., shall be certified, approved and paid, when immemorially the general statutes have provided how the fees, costs and expenses of United States Commissioners shall be certified and paid?

The United States Attorney invokes the aid of the act of August 18, 1894, c. 301, 28 Stat. 416 [U. S. Comp. St. 1901, p. 717], which directs that United States marshals upon the arrest of a person under criminal charge shall take him before the nearest United States Commissioner for hearing, as tending to show that any commissioner nearest the place of arrest was intended as "such commissioner." This very contention demonstrates that Congress had in mind a special, local commissioner, to be created for this especial office. Under said act of August 18, 1894, an offender if arrested in the most remote state or territory and taken before the nearest United States Commissioner would be entitled to a speedy hearing before such commissioner. Can it for one moment be entertained that the Hot Springs act contemplates that Dr. Rider, if arrested in the territory of Alaska, could be taken before a United States Commissioner there, and by him, not bound over for his appearance before the United States District Court for the Eastern District of Arkansas where the offense was committed for final trial, but tried, convicted, and fined by the United States Commissioner for Alaska, outside of the vicinage where the offense was committed? The act of August 18, 1894, has to do alone with matters of fees—the lessening of costs in mere preliminary hearings before United States Commissioners. The act contemplates the issuing of a warrant of arrest by one commissioner and the hearing by another; while it is manifest by section 6 of the Hot Springs act that it contemplates the issuance of a warrant, the trial, and imposition of the fine shall be by one and the same commissioner. It is apparent on the face of the Hot Springs act that the framer attempted to model it after that of the Yellowstone Park act, approved May 7, 1894. 28 Stat. 73, c. 72 [U. S. Comp. St. 1901, p. 1562]. The confusion or oversight arose when it came to making the distinction between the character of trespasses and offenses peculiar to the Yellowstone Park and those of the Hot Springs reservation. After constructing section 4 of the Hot Springs act, corresponding with the same section in the Yellowstone Park act, as to offenses, in order to extend the jurisdiction to a different character of offenses than those respecting bathing, the framer of the Hot Springs act divided the matter into two sections—four and five. So while section 6 of the Yellowstone Park act designated the commissioner who was to exercise the primary jurisdiction, and directed the manner of his appointment, and then proceeded to say: "Such commissioner shall have power, upon sworn information, to issue process in the name of the United States for the

arrest of any person charged with the commission," etc.; the framer of the Hot Springs act, when he came to the corresponding provision, began with the clause that "Such commissioner shall have power, upon sworn information," etc. It is not the province of the courts by judicial construction to supply flagrant omissions of essential positive provisions in a statute. The remedy, as well as the responsibility for an abortive act, must rest with the legislative branch of government.

It is suggested by the United States Attorney that the conviction in this case may be sustained upon the theory that as section 2 of the act confers jurisdiction upon the United States District Court for the Eastern District of Arkansas of all offenses committed within the boundaries of said reservation, it was sufficient that such jurisdiction was exercised on appeal from the judgment of the commissioner Nickels. There is some authority for the proposition that where a court has both appellate and original jurisdiction over the subject-matter, and the case reaches such court on appeal from a tribunal which did not have jurisdiction over the subject-matter, if the parties appear in the appellate court and submit to trial, the judgment thereon is valid. Randolph County v. Ralls, 18 Ill. 29. But this proposition is controverted even in civil cases. In Osgood v. Thurston, 23 Pick. (Mass.) 110. a scire facias was issued from the court of common pleas on a judgment rendered in the Supreme Judicial Court. On appeal from the judgment thereon from the court of common pleas to the Supreme Judicial Court, Shaw, C. J., held that the common pleas court did not have jurisdiction over the subject-matter; and notwithstanding the defendant below appeared to the action in the Appellate Court by interposing a general demurrer, it was held that the court only took cognizance by appeal, and, therefore, it was without jurisdiction. Thereupon the plaintiff moved that as the cause was before the court invested with original jurisdiction for leave to amend the original writ so as to make it appear as a writ issued out of the Supreme Court. To this the Chief Justice said:

"But with all the latitude of indulgence with which amendments are allowed. the court are of opinion that this is impossible. It is to be recollected, that the papers now before us, are copies of the writ and judgment of the court of common pleas, as they there appear of record. An alteration of the copy of that writ, would not only falsify the exemplification of the record as it is certified by the clerk of that court, but would make it a bad writ as a writ of the court of common pleas. If, after amendment, it were deemed an original writ issuing from this court, then it has never been served or returned. and the court could not proceed upon it."

In Dillard et al. v. St. Louis, K. C. & N. R. Co., 58 Mo. 69, jurisdiction was assumed by a justice of the peace over a subject-matter for the recovery of damages to an extent beyond his jurisdiction. The action might have been originally instituted in the Circuit Court On appeal to the latter court, it was held that although no motion was made to dismiss the action for want of jurisdiction in the justice court, the judgment was reversed, and the cause dismissed, "as the want of jurisdiction in the court over the cause of action cannot be waived, but may be insisted on at any stage of the proceedings." Citing Webb v. Tweedie, 30 Mo. 488. Without deciding that this prosecution could

be instituted in the first instance in the District Court, it is sufficient to say that we are unable to find any precedent or authority in a criminal proceeding for treating a cause on appeal, where the prosecution might have been originally instituted in the Appellate Court, as if it had been so instituted, the defendant appearing and going to trial. On principle this contention cannot be sustained. It is indispensably essential to confer jurisdiction upon the United States District Court to proceed in a criminal cause, that either a true bill of indictment, found by a grand jury, or information in due form by the United States Attorney, should first be presented to the court. There is no such practice recognized in criminal procedure as a voluntary appearance by the accused and the making up of an issue on an agreed statement of facts, as might be done in a civil action. A judgment of sentence without indictment or information would be both a novelty and a nullity.

This proceeding was instituted under section 6 of the Hot Springs act "upon sworn complaint," which might have been made by any person. Such complaint is adapted alone to a proceeding before "such commissioner." The mere transcript of this proceeding was brought into the District Court by appeal. An original proceeding in the District Court could not be instituted on a mere sworn complaint. It would require an information in due form, lodged by the United States District Attorney, on leave first had from the court, showing probable cause, and not based on mere information and belief. United States v. Baugh (C. C.) 1 Fed. 788; United States v. Tureaud (C. C.) 20 Fed. 621; United States v. Polite et al. (D. C.) 35 Fed. 58; United States v. Smith (C. C.) 40 Fed. 755. The plaintiff in error was not brought before the District Court on such an information, and was not tried on plea thereto; but the District Court acquired jurisdiction only by virtue of the appeal from the judgment of conviction and sentence by an officer who had no jurisdiction. The case before the commissioner, as before the District Court, stood as on a plea of not guilty, under which every defense, whether to the jurisdiction or to the merits, was open to the accused. Had he never appealed from that judgment, as it was coram non judice, the sentence could not lawfully have been enforced. As this case does not depend solely upon any construction and application of the federal Constitution, but turns upon the proper construction of an act of Congress and the authority of the United States Commissioner to try and sentence the person thereunder, the writ of error was properly prosecuted to this court. Spreckels Sugar Refining Company v. McClain, 192 U. S. 407, 24 Sup. Ct. 376, 48 L. Ed. 496; Harris v. Rosenberger, 145 Fed. 449.

It results that the judgment of the District Court is reversed. and the cause is remanded, with directions to the District Court to vacate its judgment, and to discharge the defendant for lack of jurisdiction.