## MAYOR & CITY COUNCIL OF EATONTON *v.* GRIFFITH.

1. A municipality can not exercise the right of eminent domain unless the power to do so is conferred upon it in its charter or in some amendment thereto, expressly or by necessary implication.
2. Neither in the act approved August 29, 1879, nor in that approved October 21, 1891, is there to be found any language which, expressly or by necessary implication, confers upon the City of Eatonton the right to condemn or take private property for the purpose of laying and constructing sewers thereon.

Argued February 9,—Decided June 23, 1909.

Injunction.    Before Judge Lewis.    Putnam superior court. June 10, 1908.

*J. S. Turner* and *M. F. Adams,* for plaintiff in error.

*W. T. Davidson,* contra.

BECK, J.   Mrs. Lizzie B. Griffith brought her equitable petition for injunction against the Mayor and City Council of Eatonton. It was alleged in the petition, that the plaintiff was the owner of certain lands, and that defendant was seeking to condemn a strip of this land for the purpose of "digging and laying a trunk sewer thereon for a distance of 1060 feet," and that the mayor and council had instituted proceedings to condemn that part of petitioner's lands referred to. Injunction was asked upon various grounds, but at the hearing the petitioner rested her right to the injunction sought upon the sole ground that the charter of the city did not confer upon it and the authorities the "power to condemn private property for the purpose of laying and constructing sewers in said city." The mayor and council insisted that the charter did confer this power; and this assertion of the right under the charter by the city, and its denial by the petitioner, raised the sole question for the determination of the court below, and this question was decided in the negative.

Whether the city had the power which it is insisted was vested in the municipality depends upon the construction of certain sections of the charter, to be found in an act approved August 29, 1879, and entitled "An act to create a city government for the town of Eatonton, in Putnam county, and to confer upon the authorities thereof certain powers in lieu of the present town government, and for other purposes;" and a section of an act amendatory of this act, the latter act being approved October 21, 1891. In the first act referred to the only provisions in any way

relating to the question under consideration are the following: Sec. VII. "That the Mayor and Alderman of said city, sitting as a Board of Council, shall have power therein to lay off, vacate, close, open, alter, curb, pave, drain, and keep in good order, and repair the roads, streets, sidewalks, alleys, cross-walks, drains, and gutters for the use of the public, or any of the citizens thereof. . . In case the Board of Council and owner of any land through which any street is to be opened or enlarged can not agree upon the value of the land to be used, the Board of Council shall choose one citizen, and the party owning the land, or his authorized agent, one, the two to choose a third, and the three so chosen shall decide the value of the land proposed to be taken, which decision shall be final." The act approved October 21, 1891, is entitled: "An act to amend an act to create a city government for the town of Eatonton, in Putnam county, and to confer upon the authorities thereof certain powers in lieu of the present town government, and for other purposes, approved August 29, 1879, by repealing that portion of said act which provides for the election of a marshal and providing for his appointment by the mayor and council, and by authorizing the mayor and council to pave the public streets of said city and assess the adjacent property owners for the payment thereof, by providing a more complete method of condemning private property for the public use of said city, by enlarging the powers of the city authorities to punish offenders, and for other purposes." In the body of this act are to be found the following provisions: "Sec. III. Be it further enacted, that the following part of section 7 of said act contained in the twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, and thirty-fourth lines thereof, to wit: the words, 'In case the Board of Council and owners of any land through which any street is to be reopened or enlarged can not agree upon the value of the land to be used, the Board of Council shall choose one citizen, and the party owning the land, or his authorized agent, one, and the two to choose a third, and the three so chosen shall decide the value of the land proposed to be taken, which decision shall be final,' be, and the same is, hereby repealed. Sec. iv. Be it further enacted, that the method of condemning private land for public use in said City of Eatonton shall be as follows: If the Board of Council and the landowners can not agree upon a price for the land to be used, then each shall select a citizen,

the two thus chosen to select a third, and the three thus selected shall decide the value of the land proposed to be taken, and in the event either the landowner or the Board of Council fails or refuses to select an assessor, then the Ordinary of Putnam county shall select for the party failing or refusing, each party having the right to appeal to the Superior Court from the decision of the assessors." This excerpt from the amendatory act is the only portion of it having any reference to the question involved here. Clearly, under the provision of the act of 1879, no right of eminent domain under which the city could lay and construct sewers was conferred upon the city; and unless that power is conferred by section IV of the amendatory act, it does not exist. Section IV however, provides nothing more than a method for assessing damages in the case of the taking of private property under the exercise of the right of eminent domain conferred by the charter. It does not in itself undertake to create, enlarge, or modify the right of eminent domain as it existed in the charter sought to be amended. The mere provision in a charter of a method of exercising the right of condemning private property is nugatory, unless somewhere in the charter the power is given, expressly or by necessary implication, to condemn. Possibly the embodiment in the charter of the method of exercising the right of condemning or taking private property might be considered in passing upon the meaning of words which were ambiguous and which might be so construed as to confer the right of eminent domain. If the right to condemn private property had been expressly given in the charter, or is to be necessarily implied from the language of that instrument, even if the method by which the power could be exercised had not been provided for in the charter, a method of condemnation might be found in the general law. The creation of the method for exercising a certain right did not create or confer the power to exercise the supposed right. In the case of *Stowe* v. *Newborn,* 127 *Ga.* 421 (56 S. E. 516), it was held that authority was conferred to lay out and open streets and to take the necessary property for doing so, in the following section of the charter of that town: "That said mayor and council shall have power to lay out, open, and abolish streets and alleys of said town, extend and change the same as the public interest may require, by paying the owners just compensation for the property taken for any such purposes."

But authority for the exercise of the right of eminent domain was found in the section of the charter referred to, because "The use of the word 'taken' implies a seizure; and there is the provision that the owners shall be paid just compensation for the property so seized or taken. The legislature, in referring to compensation, evidently meant the value of the property, without reference to any agreement between the parties. Authority is conferred upon the municipality to lay out and open streets, and authority is further conferred to take the property necessary for laying out and opening such streets, upon paying the owners just compensation for the property taken. . . The power given to take property upon making just compensation necessarily carries with it the idea of voluntary appropriation of individual property for public use upon making just compensation therefor." Nowhere in the charter of the town of Eatonton, either subsequently or previously to the passage of the amendatory act, is there to be found language equivalent in meaning to that given by construction to the word "taken" in the case last referred to. See also case of *Ga. R. & Bkg. Co.* v. *Union Point,* 119 *Ga.* 809 (47 S. E. 183). If the right to exercise the power of eminent domain had been conferred by the legislature upon the town of Eatonton, so as to authorize the laying and construction of sewers, the method for the exercise of such a right would be found in section IV of the amendatory act quoted above. But as the right itself had not expressly or by necessary implication been conferred upon the municipality, the provisions of that section can not be invoked as a source of such right; and the judge below properly held that the municipality did not have the right to condemn property for the purpose of laying and construing sewers, and consequently that the injunction prayed for should be granted.

*Judgment affirmed. All the Justices concur.*