BOTTS *v.* SOUTHEASTERN PIPE-LINE COMPANY.

No. 13269.  JUNE 21, 1940.  REHEARING DENIED JULY 29, 1940.

*A. B. Conger,* for plaintiff.  *T. M. Cunningham* and *A. R. Lawton,* for person at interest.

*Vance Custer, A. Steve Clay,* and *Hirsch, Smith & Kilpatrick,* for defendant.

BELL, Justice.  On January 10, 1940, the Southeastern Pipe-Line Company served on Miss Ruth V. Botts a written notice of its intention to condemn a right of way or easement fifty feet in width across a described tract of land in Decatur County, Georgia, owned by Miss Botts.  The notice stated:  The Southeastern Pipe-Line Company is a corporation existing under the laws of the State of Delaware, and is authorized to do business and is doing business in the State of Georgia; "said corporation is constructing a pipe line in Decatur County, Georgia, for the purpose of transporting and distributing petroleum products, and  .  .  will conduct the business of transporting and distributing gasoline and petroleum products in said line as a common carrier,  .  .  being subject to the jurisdiction of the Interstate Commerce Commission as a common carrier."  The notice pointed to the matter of assessing damage, and stated that it was given in pursuance of "chapter 36" of the Code of Georgia and laws amendatory thereof.  Instead of acquiescing and naming an assessor as requested, Miss Botts, who may hereafter be referred to as plaintiff, filed a suit in equity, challenging the company's right to proceed as it proposed to do, and

seeking an injunction. By the allegations in her petition she presented, *among others,* the following contentions: (1) The Southeastern Pipe-Line Company has no authority under the law of Georgia to exercise the power of eminent domain; (2) the charter of the company does not authorize it to exercise such power; (3) the company is not authorized by its charter to engage in the business of a common carrier or in any manner to devote its property to a public use; (4) the pipe line will be devoted to a private and not to a public use, and the proposed condemnation is for private purposes only.

The company (which may be hereinafter referred to as the defendant) filed an answer denying the plaintiff's allegations so far as they controverted its right to proceed with the proposed condemnation. The plaintiff later amended her petition. No demurrer was filed by either party. On interlocutory hearing the judge dissolved a restraining order which had been granted on presentation of the petition, and denied an injunction. To this judgment the plaintiff excepted.

The bill of exceptions contains a statement of the evidence heard by the judge. The plaintiff introduced in evidence the certificate of incorporation of the Southeastern Pipe-Line Company, showing "that said corporation's principal office was in the City of Wilmington, State of Delaware; that the nature and object and purpose of said corporation were to lay, construct, maintain, lease, purchase and operate a pipe line or pipe lines; to transport for hire by means of such pipe line petroleum and all products derived therefrom or similar thereto; to acquire, own, and use rights of way and such other property as may be incidental to, necessary, or useful in the establishment, maintenance, operation, and conduct of such business; to acquire, own, lease, construct, maintain, and operate pumping stations, compressing stations, terminals, boosters, telephone and telegraph lines, and all other facilities necessary or useful in carrying out the objects and purposes of said corporation, . . and in general to exercise all of the rights and powers conferred by the laws of Delaware upon corporations."

It appeared from other evidence that all of the capital stock had been subscribed for and paid in by two corporations, the Gulf Oil Corporation owning fifty-two and one-half per cent., and the

Pure Oil Company owning the balance. Officers of the pipe-line company testified that it was the purpose of the company to run a continuous line of pipe from Port Saint Joe,. Florida, on the gulf coast, to Chattanooga, Tennessee, through the State of Georgia, and to conduct the business of a common carrier, interstate only, in transporting gasoline through such pipe line; that gasoline will be so transported for the two companies owning the capital stock, but that this will require only about half the capacity of the pipe line, and "It is proposed or contemplated that the facilities of the pipe line will be available to all persons and firms and corporations." There was testimony to the effect that other companies besides those owning the stock had "evidenced their intention to use the facilities of the Southeastern Pipe-Line Company," but that as yet no others have arranged for such transportation. The president of the company testified that in laying and constructing the pipe line "we would have to go under and across the tracks and right of way of the Seaboard Air-Line at several places, and also the Atlantic Coast Line Railroad, the Central of Georgia Railroad, the Southern Railway Company, the A., B. & C. Railroad Company, and the A. & W. P. Railroad Company; but I am not sure about the L. & N. It is true that our company, or the construction company, has made application to each and all of said railroads for permission to go under their tracks and across the right of way, and that such applications have been refused. It is true that in the construction of the pipe line through Georgia the same would necessarily go under the surface and across the roadbed and right of way of State highways in approximately twenty-five different places. State Highway No. 1 would be traversed by our line just south of Bainbridge, and State Highway No. 38 running across the southern part of Georgia would likewise be traversed by the pipe line. It is my understanding that in the construction of the pipe line it will go under the surface and across the right of way of those highways." The same witness further testified: "The Interstate Commerce Commission will have jurisdiction over the pipe-line company and will have jurisdiction over the rates which are promulgated by the pipe-line company, which are similar to freight rates." Still other facts are shown by the record, but the foregoing is deemed a sufficient statement.

We think the case should be determined adversely to the defend-

ant pipe-line company upon the question of its authority to exercise the power of eminent domain; and in this view other questions will not require decision. The question of authority has several branches. First, has the General Assembly of this State conferred the power of eminent domain upon persons or corporations engaged in the transportation of petroleum products by pipe line? It is conceded by the defendant company that authority has not been so conferred, unless by an act passed in the year 1937, to which further reference will be made later in this opinion. "The right of eminent domain is the right of the State, through its regular organization, to reassert, either temporarily or permanently, its dominion over any portion of the soil of the State, on account of public exigency and for the public good; thus, in time of war or insurrection the proper authorities may possess and hold any part of the territory of the State for the common safety; and in time of peace the legislature may authorize the appropriation of the same to public purposes, such as the opening of roads, construction of defenses, or providing channels for trade or travel." Code, § 36-101. "The legislature may exercise this right either directly through the officers of the State, through the medium of corporate bodies, or by means of individual enterprise." § 36-103. It has been said that the power is inherent in every sovereignty, but is dormant until the lawmaking body sets it in motion. As the legislature can not in every case supervise the condemnation, it may confer the power upon agencies. Since the power to take private property for a public use or benefit is in derogation of the right of the citizen, statutes under which it is claimed must be strictly construed, and it is generally held that the power is not conferred unless an intention to that effect appears in clear and express terms, or by necessary implication. *Hopkins* v. *Florida Central & Peninsular Railroad Co.,* 97 *Ga.* 107, 109 (25 S. E. 452); *Stowe* v. *Newborn,* 127 *Ga.* 421 (56 S. E. 516); *Mayor &c. of Eatonton* v. *Griffith,* 132 *Ga.* 793 (64 S. E. 1085); *Zachry* v. *Harlem,* 138 *Ga.* 195 (2) (75 S. E. 4).

In view of the principle that private property may not be taken or damaged for public purposes without just and adequate compensation being paid, the subject of eminent domain as a legislative proposition naturally consists of two general subdivisions: (1) The power to be conferred; (2) the method or procedure for

ascertaining the amount of compensation to be paid, that is, for exercising the right. Code, § 2-301; *Carr* v. *Georgia Railroad & Banking Co.*, 1 *Ga.* 524; *Brewer* v. *Bowman*, 9 *Ga.* 37; *Parham* v. *Justices of the Inferior Court*, 9 *Ga.* 341 (2), 349.

Before the year 1894 the General Assembly had conferred the power upon various corporations and entities, for purposes designated. During that year an act was passed by that body "to provide a uniform method of exercising the right." Ga. L. 1894, p. 95. Section 1 declared "That from and after the passage of this act, all corporations or persons authorized to take or damage private property for public purposes shall proceed as herein set forth." Next followed sections 2 to 28, providing the procedure. Section 29 was as follows: "The method of condemnation of property and assessment of damages hereinbefore provided shall apply to condemnation by cities, counties, railroads, telegraph, canal, mining, and waterworks companies, drainage by counties, tramroads, lighthouses, and beacon construction, and to all persons or corporations having the privilege of exercising the right of eminent domain; but nothing herein shall be construed to alter or repeal the law for opening public or private roads or ways." The entire act was embodied in the Code of 1895, §§ 4657-4686, with practically no change in language. It was carried in the Code of 1910, together with some later statutes, not here material, as §§ 5206 et seq. Section 29, last above quoted, was reproduced verbatim in each of these Codes, except that in the Code of 1910 it stopped short of the clause "but nothing," etc., which had been stricken by legislative act in 1897. Code of 1895, § 4685; Code of 1910, § 5235.

In the year 1929, the General Assembly passed an act to confer the power of eminent domain upon persons who are or may be engaged in constructing or operating pipe lines for transportation of natural or artificial gas *for purposes stated,* to amend section 5235 of the Code of 1910, relating to method, and for other purposes. Ga. L. 1929, p. 219. Bear in mind this was for natural or artificial gas, not for gasoline. Section 1 of that act was as follows: "The power of eminent domain is hereby granted to and conferred upon persons who are or may be engaged in constructing or operating pipe-lines for the transportation and/or distribution of natural or artificial gas; and upon persons who are or may be engaged in furnishing natural or artificial gas for heating, light-

ing, and/or power purposes in the State of Georgia." Section 2 amended section 5235 of the Code of 1910 by adding words to make it read as follows, the second sentence containing the words added: "The method of condemnation of property and assessment of damages hereinbefore provided shall apply to condemnation by cities, counties, railroads, telegraph, canal, mining, and waterworks companies, drainage by counties, tramroads, lighthouses, and beacon constructions, and to all persons or corporations having the privilege of exercising the right of eminent domain. The method herein referred to shall also apply to persons who are or may be engaged in constructing or operating pipe-lines for the transportation and/or distribution of natural or artificial gas; and upon persons who are or may be engaged in furnishing natural or artificial gas for lighting, heating, and/or power purposes in the State of Georgia." Section 3 declared "that the word 'persons' as herein used shall include individuals, partnerships, associations, and corporations, domestic or foreign; and shall include the singular as well as the plural." Section 4 repealed conflicting laws.

Next came adoption of the Code of 1933, in which the general or uniform method of exercising the right of eminent domain was dealt with in chapters 36-2 to 36-6, inclusive, under the general heading, "Part II. Condemnation of Property. Procedure." Other portions of the Code or other statutes must be looked to for grants of the power. The several chapters just mentioned were based, in the main, on the act of 1894, with parts of the act of 1929 appearing in one of them. There was some difference in arrangement from that employed in the former Codes. The section which had been taken from section 29 of the act of 1894 (Code of 1895, § 4685; 1910, § 5235) was brought forward and made to precede other provisions which it had followed in the previous Codes. As amended by the act of 1929, it is contained in chapter 36-2 of the Code of 1933, which is the first chapter on procedure. It appears as section 36-202, and is in the same language as that quoted above from the act of 1929, except that the word "hereinafter" was substituted for "hereinbefore," and the final phrase "in the State of Georgia" was omitted. The only other section in the same chapter is the preceding section, 36-201, which is a verbatim codification of section 3 of that act.

It may be stated in this connection that section 1 of the act of

1929, *conferring the power* of eminent domain upon persons therein designated, was entirely omitted from the Code of 1933.

We next quote in full the act of 1937, in virtue of which the defendant company claims the right of eminent domain:

"An act to amend section 36-202 of the Code of 1933 (title 36), chapter 2, to provide the right of eminent domain for the purpose of running pipe-lines for the transportation and/or distribution of petroleum products.

"Be it enacted by the General Assembly of Georgia as follows:

"Section 1. That section 36-202 of the Code of 1933 (title 36), chapter 2, entitled 'To what condemnation applicable,' is hereby amended by adding at the end of said section the following, 'and for the purpose of running pipe-lines for the transportation and/or distribution of petroleum products,' so that said section as amended shall read as follows:

"36-202 (5235), To what and to whom method of condemnation applicable. The method of condemnation of property and assessment of damages hereinafter provided shall apply to condemnation by cities, counties, railroads, telegraph, canal, mining, and waterworks companies, drainage by counties, tramroads, lighthouses, and beacon constructions, and to all persons or corporations having the privilege of exercising the right of eminent domain. The method herein referred to shall also apply to persons who are or may be engaged in constructing or operating pipe-lines for the transportation and/or distribution of natural or artificial gas; and upon persons who are or may be engaged in furnishing natural or artificial gas for lighting, heating, and/or power purposes and for the purpose of running pipe-lines for the transportation and/or distribution of petroleum products.

"Section 2. Be it further enacted, That all laws and parts of laws in conflict with this law be and the same are hereby repealed."

It will be noticed that the caption of this act contains the words "to provide the right of eminent domain," but in the body all that was done was to add to the general section on method, as amended by the act of 1929, the further words "and for the purpose of running pipe-lines for the transportation and/or distribution of petroleum products."

It is contended by the plaintiff that the amendment of 1937 did not confer the power, but merely declared the method to be applied

in the exercise of it when and if in the future the power should be granted by the General Assembly. The defendant contends that the amending act, considered with what it amended and the history and policy of legislation on the subject, actually conferred the power upon persons engaged in the business of running pipe lines for transportation or distribution of petroleum products, by providing that the general method of procedure shall apply for "the purpose of running" such pipe lines, and that any requirement as to designation of persons was fulfilled by the Code, § 36-201, which immediately precedes the section amended. This states the defendant's contention only in a general way. In particularity, it consists of various points which have been elaborated in the briefs and forcefully argued by able counsel. While the main propositions that have been urged will be discussed later on in this opinion, we may say at this juncture that we can not agree that the effect of this amendment was to grant the right of eminent domain to any person or class of persons. As we construe the act, it simply amended a statute relating to the *method* of exercising the right by persons or corporations having it, and did *not purport* to deal with any other subject.

We have no thought, however, that the legislature could not by any sufficient language amend a section on method so as to confer the power; for, as stated by counsel, there is no special formula of words that must be pronounced by the legislative body in bestowing the power of eminent domain; and the view which we take of the case is based upon the language actually used by the General Assembly, considered with its statutory environs and such other matters as may be properly noticed in its construction.

Notwithstanding some argument to the effect that the act plainly confers the power, and whether such argument amounts to a claim of express grant, we think the act is so barren of anything in the nature of such a grant that the only question which may be considered as reasonably debatable is whether the power was conferred by implication, and in the following discussion we shall deal with the case accordingly. This statement does not mean that any portion of the argument is being ignored, because, regardless of how we may describe a legislative expression or pursue the study of it, the sole object of judicial interpretation is to find and declare the true intention of the lawmaking body.

We shall first consider the body of the act stripped of its caption, and afterwards determine the effect, if any, which should be given to the caption in ascertaining its meaning.

While, as indicated above, we do not question that the General Assembly could have conferred the power of eminent domain by amending a statute on method, still it can not be overlooked that it was only a section on method that the act of 1937 purported to amend, as this fact is material in construing the amendment.

In support of the proposition that the amended section did relate to method only, several decisions heretofore rendered by this court, though referring to this law as it existed before the act of 1929, may be mentioned.

In *Garbutt Lumber Co.* v. *Georgia & Alabama Railway,* 111 *Ga.* 714 (2), 716 (36 S. E. 942), it was stated that the provisions of the act of 1894, appearing at that time in the Code of 1895, "do not contain any grant of power to any corporation or person to exercise the right of eminent domain, but simply provide how property may be condemned, and the damages assessed when the right to do so is derived from any lawful statute."

In *Georgia Railroad & Banking Co.* v. *Union Point,* 119 *Ga.* 809 (47 S. E. 183), the principal question for decision was whether certain language in the charter of the town of Union Point should be construed as conferring the power of eminent domain. In the course of the opinion it was said: "The exercise of the power of eminent domain being in derogation of common right, the power can not be inferred or implied from vague or doubtful language, but must be given in express terms or by necessary implication." Counsel for the municipality endeavored to strengthen its position by invoking the provisions of the act of 1894. In answer to this argument, it was stated: "It is only corporations or persons who are authorized to exercise this power who can resort to the provisions of the act of 1894, in order to condemn private property. The purpose of that act, as declared in its title, was, 'to provide a uniform method of exercising the right of condemning, taking, or damaging private property;' and its first section declared that 'all corporations or persons authorized to take or damage private property for public purposes shall proceed as herein set forth.' The codification of the act did not enlarge its purpose, for the Civil Code, § 4657, adopts literally the language above quoted from the

first section of the act. This statute was certainly not intended to confer power, or to enlarge or supplement the meaning of any statute then in existence or which might thereafter be passed, but was simply intended to provide a general and uniform method of exercising a power which had been or should thereafter be given. It applies only to 'corporations or persons *authorized* to take or damage private property for public purposes.'" In *Marietta Chair Co.* v. *Henderson*, 121 *Ga.* 399 (5), 408 (49 S. E. 312, 104 Am. St. R. 156, 2 Ann. Cas. 83) (compare *Parham* v. *Justices*, supra), it was shown that two things are "still required" before any person or corporation may exercise the right of eminent domain: (1) The authority to take or damage private property, and (2) provision for ascertaining the compensation to be paid; and in that connection the court again referred to the act of 1894 as providing a method.

For other decisions to the same effect, see *Georgia Granite Railroad Co.* v. *Venable*, 129 *Ga.* 341 (2), 346 (58 S. E. 864); *Alexander* v. *Augusta*, 134 *Ga.* 849, 854 (68 S. E. 704).

Whether or not these statements were actually necessary to a decision in each of these cases, they were undoubtedly sound in relation to the law as it then existed, and nothing has happened since to destroy their force or to render them inapplicable, unless it be adoption of the Code of 1933, embracing in part the act of 1929, and passage of the act of 1937.

We have studied with care the argument of counsel in reference to the manner in which the act of 1929 was treated by the codifiers in arranging, and by the legislature in adopting, the new Code, but after so doing, we are unable to agree that section 36-202 did anything more towards conferring power than did the original provision of the act of 1894 from which it was in part codified. The fact that section 1 of the act of 1929 was entirely omitted from the Code is of no material significance in this connection. It was that section which conferred the power, and since the Code as prepared and adopted contained nothing in conflict therewith, its omission from the Code did not result in its repeal by implication. See *Georgia Railroad & Banking Co.* v. *Wright*, 124 *Ga.* 596 (5) (53 S. E. 251); *City of Cochran* v. *Lanfair*, 139 *Ga.* 249 (2) (77 S. E. 95); *Orr* v. *Riley*, 160 *Ga.* 480 (128 S. E. 669); *Newcomb* v. *Niskey's Lake Inc.*, 190 *Ga.* 565 (9 S. E. 2d, ---).

We thus see that at the time of the passage of the act of 1937, sections 1 and 2 of the act of 1929 were both still intact as the law of Georgia, the one conferring power and the other providing method. This we think is a sound statement of law, whatever might be said otherwise as to change by codification. On the latter question, see *Central of Georgia Railway Co.* v. *State*, 104 *Ga.* 831, 842 (31 S. E. 531, 42 L. R. A. 518); *Davis* v. *Davison*, 160 *Ga.* 545, 548 (128 S. E. 743); *Daniel* v. *Citizens & Southern National Bank*, 182 *Ga.* 384 (185 S. E. 696); *Stevens* v. *Duncan*, 189 *Ga.* 730 (7 S. E. 2d, 745); *Clark* v. *Newsome*, 180 *Ga.* 97 (178 S. E. 386); *Atlanta Coach Co.* v. *Simmons*, 184 *Ga.* 1 (190 S. E. 610); *Alropa Corporation* v. *Pomerance*, 190 *Ga.* 1 (9 S. E. 2d, 67).

Section 3 of the act of 1929, defining the word "persons," as used in that statute, and now codified as § 36-201, may or may not have undergone a change in meaning through the process of codification. Counsel for the plaintiff contends that in its present setting it defines the word "persons" only as related to procedure, while it is insisted by the defendant's counsel that it also defines the persons who may now exercise the power, which they contend has been conferred by section 36-202 as amended by the act of 1937, for the purpose of running pipe lines as described in the latter act. On this question as to persons, we do not deem it necessary to make any ruling at this time, considering as we do that the *power* of eminent domain is not conferred upon any person by the provisions of section 36-202 as amended by the act of 1937.

It is insisted for the defendant that a statute must be construed with reference to the whole system of which it forms a part. We agree that this is a sound rule of construction, and also that it should be applied in this case. Compare *McDougald* v. *Dougherty*, 14 *Ga.* 675 (5); *Cook* v. *Wier*, 185 *Ga.* 418, 421 (195 S. E. 740). But its application, we think, leads to a different conclusion from that urged by counsel. It goes with another rule: "It is dangerous to imply a legislative intent contrary to previous legislation, from doubtful expressions which may admit of different interpretations." *Trustees* v. *Atlanta*, 76 *Ga.* 181 (3 *b*), 182; *Columbus Mutual Life Insurance Co.* v. *Gullatt*, 189 *Ga.* 747 (8 S. E. 2d, 38); 25 R. C. L. 1052, § 277. In construing a statute, certain presumptions must be indulged. In 59 C. J. 1038, § 616, it is stated: "All statutes are presumed to be enacted by the legisla-

ture with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts."

Section 36-202 of the present Code is headed: "To what and to whom method of condemnation applicable." While this language departs somewhat from the heading of the corresponding section in previous Codes, it still does not indicate an intention to enlarge the section so as to make of it a grant of power,—even assuming that a change in the heading or title might be considered as some evidence of the legislative intention. See, in this connection, *Lasseter* v. *O'Neill,* 162 *Ga.* 826 (135 S. E. 78, 49 A. L. R. 1076); *Battle* v. *Shivers,* 39 *Ga.* 405; *Blocker* v. *Boswell,* 109 *Ga.* 230, 235 (34 S. E. 289). It expressly refers here to "method" only, and not to power.

In the light of what has been said, it must be assumed that the General Assembly, in passing the act of 1937, knew that section 36-202 related to method only, and dealt with it accordingly. In these circumstances, it would seem perfectly clear that there could have been no intention to convert the section into a grant of power by adding only the words "and for the purpose of running pipelines for the transportation and/or distribution of petroleum products."

We can not view the matter otherwise because of the words "shall also apply," which are discussed with particularity in the briefs. This language was taken from that portion of the act of 1929 which related to method only, to wit, section 2, and a consideration of the act as a whole shows that these words were not intended as referring in any manner to power, since the power itself had just been conferred in clear and sufficient terms by section 1; nor, as we have seen, did they signify more after codification as part of section 36-202. Since they did not originate in the amendment of 1937, but were merely quoted in the act as part of the section amended, and since there is nothing to indicate that they were intended to have a new and different meaning, they should be construed as having therein the same meaning that was attached to

them before the enactment of such amendment. "Words and phrases, the meaning of which has been ascertained in a statute, are, when used in a subsequent statute or subsequent parts of the same statute, to be understood in the same sense." *Lane* v. *Morris,* 10 *Ga.* 162 (3), 173; 59 C. J. 1094-1096. The question is substantially the same as if the identical words had been added by amendment to section 2 of the act of 1929, before the section was codified. So, even apart from other considerations, we can not sustain the contention that the law as amended, to the effect that "the method . . hereinafter provided shall also apply . . for the purpose of running pipe lines for the transportation and/or distribution of petroleum products" necessarily means that any person or persons engaged in such business may use the method for that purpose, and thus amounts to a grant of the power itself.

There is still another view of the matter that occurs to us as we study the clause, "The method . . hereinafter provided shall also apply." What is the meaning of the word "shall" in this connection? The General Assembly would hardly say to any person or class of persons that he or they *shall* or must exercise the power of eminent domain, although it would be perfectly natural to declare that persons having the power *shall* pursue a particular method. Counsel for the defendant apparently construe the term as the equivalent of "may," or as a word of permission. While the word "shall" may be used in either a mandatory or a permissive sense, yet we are bound here by the rule of strict construction, and, hence, must apply the meaning which tends to deny the power. Accordingly, the proper construction seems to be that the entire clause pertains to method only and does not in any sense imply authority. See, in this connection, *Chestatee Pyrites Co.* v. *Cavenders Creek Gold Mining Co.,* 119 *Ga.* 354, 357 (46 S. E. 422, 100 Am. St. R. 174) ; *Georgia, Florida & Alabama Railway Co.* v. *Sasser,* 130 *Ga.* 394 (60 S. E. 997) ; 59 C. J. 1079, § 635.

In discussing codification and policy of legislation in reference to eminent domain, counsel for the defendant rely strongly upon the statement by this court in *Jones* v. *North Georgia Electric Co.,* 125 *Ga.* 618, 624 (54 S. E. 85, 6 L. R. A. (N. S.) 122, 5 Ann. Cas. 526), that "it is not so much the character of the person exercising the right as the uses to which the object is to be ap-

plied." This statement evidently did not mean that the power may be considered to have been conferred without words clearly indicating an intention to that effect. It was based upon principles as to purposes and agencies which had been contained in all of the previous Codes, and which had been expressed in substance in earlier decisions as far back as *Mims* v. *Macon & Western Railroad Co.*, 3 *Ga.* 333, 338. The question for decision was the constitutionality of an act purporting, among other things, to authorize corporations or individuals owning or controlling water power to exercise the right of eminent domain for uses designated, and the precise point in controversy was whether the act was "an attempt to authorize individuals to exercise the State's right of eminent domain for other than public purposes." It is insisted by the defendant that the decision in that case virtually amounted to a pattern for legislation, and that if the court did not mean what it said, to wit, that it is not so much the character of the person "as the uses to which the object may be applied," it then in effect set a trap for the codifiers and the General Assembly. We can not so regard the decision in the *Jones* case. As we have just indicated, it laid down no new principle of law; and we think it implied nothing as to the *mode* of legislation on the subject of eminent domain.

The decision was rendered in the year 1906. It did not induce a change of policy in the following enactments on the subject of eminent domain: Drainage Courts, Ga. L. 1911, p. 108; Western & Atlantic Railroad, Ga. L. 1918, p. 253; Coastal Highway District, Ga. L. 1929, p. 217; running pipe lines for transportation of natural or artificial gas, Ga. L. 1929, p. 219; Sanitation by counties, Ga. L. 1937, p. 785; Housing Authority, Ga. L. 1937, p. 210 (Ga. Ann. Code, Cumulative Pocket Part, §§ 99-1102 et seq.); and numerous acts granting or amending charters of municipal corporations. So we are of the opinion that the decision in the *Jones* case did not mislead the General Assembly in 1937, and that it sheds no light upon the present question.

Counsel also rely on the case of *Gardner* v. *Georgia Railroad & Banking Co.*, 117 *Ga.* 522, 526 (43 S. E. 863). The point in the *Gardner* case was, whether or not an act repealing a certain section of the charter of the company purporting to confer upon it the power of eminent domain, and at the same time substituting for

the original section so stricken another charter provision dealing with the method of condemnation, was intended to withdraw from the company the right of eminent domain which the legislature had previously given or undertaken to give to it. No such inquiry is presented in the instant case. In deciding as to what was the intent of the General Assembly in that instance, the court referred to various other special acts conferring the right on similar companies, and on a survey of the whole reached the conclusion that it was not in the mind of the legislature to withdraw that which it had already granted, saying: "We think a careful reading of the various acts involved will show that the General Assembly of 1836 had no intention of *taking from* the defendant company the right to condemn private property for its use in serving the public." [Italics ours.] But in the decision in that case it was further said: "And we also think that the language of the transferred section, taken in connection with that of the act making the transfer, was sufficient as furnishing both the power to condemn and the method of procedure to enforce it." The "transferred" or substituted section was quoted at length in the opinion and contained such expressions as "Any person . . from whose land timber or other materials shall be *taken*," and "the loss or damage . . in consequence of the land being *taken*." [Italics ours.] It was evidently in view of these expressions that the court reached the conclusion as last quoted above from the opinion. We say this because similar expressions with like context have been held to imply the *power* of eminent domain. *Stowe* v. *Newborn,* supra. No such language or any equivalent thereof is contained in the act of 1937. The decision did not hold that a provision for method only would imply the power, and held nothing contrary to what we here rule.

Much has been said in the briefs on both sides regarding the fact that the defendant does not appear to have been chartered as a common carrier, but it is argued for the defendant that this is immaterial, since under a Federal statute the company will be amenable to the Interstate Commerce Commission as a common carrier, once it enters upon the business of transporting gasoline in interstate commerce by pipe line. See U. S. C. A., title 49, §§ 1(3), 1(4); Pipe-Line Cases, 234 U. S. 548 (34 Sup. Ct. 956, 58 L. ed. 1459); Valvoline Oil Co. *v.* United States, 25 Fed.

Supp. 460. The fact that the company might by some act of its own render itself subject to the jurisdiction of the Interstate Commerce Commission can, as we think, have absolutely no bearing upon whether it has been granted the power of eminent domain by the General Assembly of this State; nor in the present state of our law would it have helped the defendant if it had been chartered by the State of Delaware to engage in the business of a common carrier. Only the General Assembly of Georgia can grant the right to exercise the power in this State, and counsel of course do not contend otherwise. As a further argument in favor of the claimed authority, it is suggested that unless the act of 1937 has the effect of conferring the power of eminent domain upon persons or corporations engaged in the transportation of gasoline by pipe line, the entire act is perfectly useless and a mere absurdity; that the legislature should not be presumed to have done a useless or absurd thing, and that consequently we should construe the act as conferring the power.

Whatever may have been the purpose of the legislature in passing this statute, it did not lead to absurd *consequences*. Even if it might be considered either as unnecessary or premature unless it should be taken as conferring the power, neither or both of these reasons would authorize an implication that a grant of power was in fact intended, where it is otherwise clear that no such intention was entertained by the General Assembly. See, in this connection, *Ezekiel* v. *Dixon*, 3 *Ga.* 146, 152; *Penick* v. *Foster*, 129 *Ga.* 217 (6) (58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346); *Floyd County* v. *Salmon*, 151 *Ga.* 313, 315 (106 S. E. 280); *Gillis* v. *Gillis*, 96 *Ga.* 1, 9 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121); 59 C. J. 968-972, § 574; 25 R. C. L. 1017-1019, §§ 255-264.

Since it is presumed that a power "so dangerous and extraordinary" (*Markham* v. *Howell*, 33 *Ga.* 508) will be granted cautiously if not sparingly, and hence that words used by the lawmakers will be measured with care, nothing should be added by implication except in accordance with the plain and manifest intention of the legislature. The authority of a given corporation to take or damage private property for public purposes must either be expressed in the law itself, or "it must be necessarily implied from what is expressed there." *Georgia Railroad Co.* v. *Union*

*Point,* 119 *Ga.* 809, 814 (supra) ; *Bradford* v. *Justices of Inferior Court,* 33 *Ga.* 332; *McDuffie* v. *Perkerson,* 178 *Ga.* 230, 234 (173 S. E. 151) ; *Baggerly* v. *Bainbridge State Bank,* 160 *Ga.* 556, 561 (128 S. E. 766) ; *State Revenue Commission* v. *National Biscuit Co.,* 179 *Ga.* 90 (3) (175 S. E. 368).

In view of what has been said, it is our opinion that this statute considered without its caption plainly does not confer the power of eminent domain. We will now consider the title.

We have referred to the fact that the title of this statute contained words which if found in the body might indicate an intention to grant authority, but that no such language appeared in the body.

The title of an act is no part of it, and can be given effect only as an aid to construction in case of ambiguity. *Johnson* v. *Reese,* 31 *Ga.* 601, 605; *Walden* v. *Whigham,* 120 *Ga.* 646 (48 S. E. 159) ; *Bentley* v. *State Board of Medical Examiners,* 152 *Ga.* 836, 839 (111 S. E. 379).

In this instance, as we think we have shown, the entire act is plain and unambiguous, unless the title be also considered. The title could not be treated as creating an ambiguity and then as explaining such ambiguity in accordance with its own language. Any such course of reasoning would result in making the title controlling as to acts otherwise unambiguous.

In *Gilbert* v. *Georgia Railroad & Banking Co.,* 104 *Ga.* 412 (30 S. E. 673), more than mere title was discarded. The ruling made was that, "When in an act amending a section of the Code there are stated in the first part of the act certain amendments to be made, and in the latter part of the act it is declared that the section as amended shall read in a certain way (setting it forth), none of the amendments referred to in the first part of the act become operative, save those alone which are contained in the recital in the latter part of the act as to how the section shall read as amended." The decision was based upon the theory of "the last expression." In the act here under consideration, the last expression of course was in the body of the act, and contained nothing to indicate a grant of power. In such a case the title should go for naught. Compare *Lamar* v. *Allen,* 108 *Ga.* 158 (5), 165 (33 S. E. 958) ; *Curtis* v. *Ashworth,* 165 *Ga.* 782, 784 (142 S. E. 111, 59 A. L. R. 1457).

On the question of whether the statute was intended to confer the power claimed, it is stated in one of the briefs, "We know that this was the purpose of the act, because the General Assembly says so in the title," and a considerable portion of the argument seems to proceed upon this idea. To this extent the argument is based upon an incorrect premise, since the intention of the General Assembly is to be determined from the enacting words alone where the act is unambiguous, and from the entire legislative scheme, including the title, only in case of ambiguity. If, as we have said, the body of this act contains nothing to show an intention to confer power, then the title can not be used as any evidence of such intention. The rule is a familiar one in this State, and is a generally accepted principle. At least one reason for the rule would seem to be that in the process of legislation the body of an act may be reduced by amendment, without a corresponding change in the title, so that after enactment, the title, being then broader than the body, might indicate an intention positively contrary to the legislative will. In making this statement, we do not mean to suggest that anything of this nature occurred in reference to the act here under consideration. "The act can not be extended by construction beyond the scope of its title, nor can the title add to or extend the operation of the act or supply omissions therein." 59 C. J. 1007, § 599; 25 R. C. L. 1032, § 267. "That the title of an act is sufficiently comprehensive to uphold legislation that might have been, but was not, enacted, is no evidence that such omitted legislation was intended to be enacted." Carson v. Olcott, 105 Ore. 259 (209 Pac. 610). "The title of an act must express the object of the law, and the enactment itself, without resort to the title, must make the law." People v. Smith, 246 Mich. 393 (224 N. W. 402). "The title of a legislative act can not be so read into the body of it as to supply the absence of a substantive provision essential to the conferring of power and authority." Rider v. United States, 149 Fed. 164 (1). This latter ruling is especially apropos here, since we are in like manner concerned with a question as to grant of power. In the opinion in that case it was said: "It is not the province of the courts by judicial construction to supply flagrant omissions of essential positive provisions in a statute. The remedy, as well as the responsibility for an abortive act, must rest with the legislative branch of the government."

Now, in another case considered at the same time as this one, we have applied the rule, as above recognized, that the title of an act may be resorted to as an aid to construction in case of ambiguity. *State Board of Education* v. *County Board of Education of Richmond County,* ante, 588 (9 S. E. 2d,    ). In that case, however, in view of the history of the legislation and other matters there mentioned, we considered the statute as being ambiguous as to the intention or purpose of the General Assembly. The statute considered in that case is greatly different in nature from that involved in the instant case. The one is remedial in character, relating as it does to an apportionment of State school funds, and back of it was a condition of affairs, including bases of apportionment, that the General Assembly seemingly regarded as something to be remedied. The other is claimed by the defendant company as a grant of power, the sovereign power of eminent domain. If there was any condition to be remedied in reference to the *particular enterprise,* it was merely the absence of such power, and this was a condition which so far as appears had never before been considered by the General Assembly. There was no such legislative history as in the school-fund case.

In that case, we referred to the case of *Price* v. *Edwards, 5 Ga.* 364. The discussion in the *Price* case, especially at pages 368 and 371, will on examination illustrate the difference between the statutes under consideration respectively in the *Richmond County* case and the instant case. See also *West End &c. Railroad Co.* v. *Atlanta &c. Railroad Co.,* 49 Ga. 151 (2) ; *McLeod* v. *Burroughs, 9 Ga.* 213 (3) ; *Justices of the Inferior Court* v. *Griffin &c. Plank Road Co.,* 9 Ga. 475.

Our conclusion is that the act of 1937 on proper construction does not confer the power of eminent domain upon any class of persons or corporations. Other phases of the question of authority as pressed by the plaintiff in error would involve inquiry into the defendant's charter capacity, its right or authority as an undomesticated foreign corporation, and still other matters. But in view of the conclusion just stated, it is unnecessary to deal further with this general question, or to discuss to any extent other questions raised by the record.

The judge erred in refusing an interlocutory injunction.

*Judgment reversed. All the Justices concur.*

ON MOTION FOR REHEARING

BELL, Justice. After a thorough consideration of the motion for rehearing, we have concluded that our decision was in the main correct, and led to the proper result, although it was not clear in some respects, and certain of the defendant's contentions were not discussed as fully as they might have been. In the circumstances, we determined to revise the opinion without granting a rehearing.

"If, upon consideration of a motion for a rehearing, this court should be of the opinion that its judgment as rendered is correct, but that some revision of the opinion would be appropriate, this court may, in its discretion and according to its powers as heretofore exercised, revise the opinion accordingly, without granting a rehearing; in which event the court shall so advise the clerk, who shall then promptly notify counsel that alterations have been made." Rule 40(f), 187 *Ga.* 842. In this instance we have substantially revised the original opinion in several respects. In view of the changes thus made, we deem it unnecessary to say more on the motion itself, especially as an identical motion has been discussed in detail in the companion case, *Harrell* v. *Southeastern Pipe Line Co.,* post .

*Rehearing denied. All the Justices concur.*