THORNTON *et al. v.* ANDERSON, executrix.

No. 17377. MARCH 13, 1951.

*Joseph B. McGinty* and *James T. Sisk*, for plaintiffs in error.
*Stapleton & Williford,* contra.

CANDLER, Justice. Mrs. Ruebena Thornton executed her will on December 15, 1938. By it she gave her husband $5, bequeathed the rest of her estate to her mother, Mrs. Allie Anderson, and made no reference to or mention of a child or children. She and her husband, O. B. Thornton Jr., on September 24, 1949, legally adopted a minor child, Mary Rebecca Thornton. Her will made no provision in contemplation of that adopting event. The testatrix died March 8, 1950. Mrs. Allie Anderson, the nominated executrix, first probated the will in common form and then offered it for probate in solemn form, and her petition for probate, in part, alleges "that the said Ruebena Thornton, deceased, left as her sole heirs at law her husband, O. B. Thornton Jr., and an adopted child, Mary Rebecca Thornton, of the age of nineteen months." O. B. Thornton Jr., individually and as next friend of Mary Rebecca Thornton, filed a caveat and alleged that the paper offered as Mrs. Thornton's will should not be probated as such because it had been impliedly revoked by the adoption of Mary Rebecca Thornton subsequent to its execution. The propounder filed a motion to strike the caveat on the ground that it alleged no legal reason why probate should be refused. The proceeding was appealed by consent to the Superior Court of Elbert County. The parties stipulated that the will involved was valid and should be probated in solemn form unless it was revoked by the subsequent adoption of Mary Rebecca Thornton by the testatrix and her husband. The motion to strike the caveat was sustained and the will was duly probated. The exception is to that judgment.

Primarily, two statutes of this State must be examined for

their bearing on the question presented for decision, which is: whether or not the adoption of a child under the statutes of this State operates to revoke by implication or inference of law an antecedent will of the adopting mother in which no provision was made in contemplation of that adopting event. One of these statutes is an act of the legislature, approved February 25, 1949, effective six months thereafter (Ga. L. 1949, p. 1157), amending a section of our adoption act of 1941 (Ga. L. 1941, p. 305), the material portion of which amending act of 1949 is as follows: "said adopted child shall be considered in all respects as if it were a child of natural bodily issue of petitioner or petitioners, and shall enjoy every right and privilege of a natural child of petitioner or petitioners; and shall be deemed a natural child of petitioner or petitioners to inherit under the laws of descent and distribution in the absence of a will and to take under the provisions of any instrument of testamentary gift, bequest; devise or legacy unless expressly execluded therefrom." The other statute, which, in varying language, has existed since 1834 and is now codified as § 113-408 of the Code of 1933, declares that "In all cases, the marriage of the testator or the birth of a child to him, subsequently to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will." Concerning the last statute referred to, this court in *Ellis* v. *Darden*, 86 *Ga.* 368 (12 S. E. 652, 11 L.R.A. 51), speaking through Chief Justice Bleckley, said: "The object of the provision is to secure a specific moral influence upon the testamentary act—the moral influence of having before the mind a contingent event so momentous as marriage or the birth of a child, and so deserving of consideration in framing a testamentary scheme." See also *Sutton* v. *Hancock*, 115 *Ga.* 857 (42 S. E. 214). In 1 Am. Jur., 661, § 61, the author says: "In most jurisdictions wherein the birth of children to a testator operates as a revocation of a previously executed will, and adopted children are entitled to the same rights of inheritance as natural children, the adoption of a child is held so to revoke a will previously made by the adoptive parent, though authority exists to the contrary." And the cases cited in support of the majority rule are: Hilpire v. Claude, 109 Lowa 159 (80 N. W. 332, 46 L.R.A. 171, 77 Am. St. R.

524) ; Flannigan *v.* Howard, 200 Ill. 396 (65 N. E. 782, 59 L.R.A. 664, 93 Am. St. R. 201) ; In re Rendell's estate, 244 Mich. 197 (121 N. W. 116) ; Glascott *v.* Bragg, 111 Wis. 605 (87 N. W. 853, 56 L.R.A. 258).

Hilpire *v.* Claude, supra, involved an Iowa Statute (Code § 3276), which provides that "the subsequent birth of a legitimate child to the testator before his death will operate as a revocation" of his will, and other sections of a separate adoption statute, among which are: Code § 2307, conferring on an adopted child "all the rights, privileges and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock"; Code § 2310, providing that "the rights, duties and relations between the parent and child by adoption, shall, thereafter, in all respects, including the right of inheritance, be the same that exist by law between parent and child"; and Code § 2311, providing ". . But no action of the court in the premises shall affect or diminish the acquired right of inheritance on the part of the child, to the extent of such right in a natural child of lawful birth." In the reasoning of the Iowa court the following appears: "The reasons for the rule that subsequent birth of a legitimate child to the testator before his death operates as a revocation of his prior will apply with equal force to a subsequent adoption under a statute like ours, containing no exceptions or qualifications, and declaring that the rights, duties and relations between parent and child by adoption shall 'in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth.' While these relations and rights are statutory, and may not be enlarged beyond the plain meaning of the statute, that meaning should not be defeated by any strained construction. We conclude that it is the legislative intention to place adopted children upon the same level as children of lawful birth, in all respects."

And it was said by the Supreme Court of Illinois in Flannigan *v.* Howard, supra: "By the plain and unambiguous language of the statute, the right of the plaintiff in error to inherit from Bridget Howard is made identical with the right of a child born to her, and when plaintiff in error became her child by adoption, after the making of the will, the effect, in law, was

precisely the same as the birth of a child to the testatrix. The argument against the rights of plaintiff in error is solely on the ground that she was not, as a matter of fact, born to the testatrix, and, therefore, not the sort of a child mentioned in the Statute of Descent. This argument would apply with equal force to other sections of the same act which provide for the descent of intestate property to children of the decedent, making no reference to children by adoption. By accepted definitions, a child is the immediate progeny of human parents, and in its natural meaning the word applies to offspring born to such parents. By the statute, however, the relation of parent and child is recognized and declared as legally existing between persons not so related by nature. The Statute of Descent does not in any case mention this legal relation of an adopted child and the adopting parent, but the right of the adopted child is fixed by the act providing for adoption which creates, in law, the relation of parent and child."

In Georgia, the rules of inheritance, as fixed by statute, use the words "child" or "children" without mentioning therein an adopted child or children. Nevertheless, in virtue of our adoption statutes, an adopted child or children take under our statute of descent as natural children of lawful birth. For example, under our rules of inheritance, "Upon the death of the husband without lineal descendants, the wife is his sole heir, and upon the payment of his debts, if any, may take possession of his estate without administration." Code, § 113-903 (1). But, under the provisions of our adoption statute and the rights of inheritance conferred by it, an adopted child of the deceased husband, like a lineal descendant of the deceased, will deprive the wife of the right to take his entire estate as sole heir at law, without administration; and this is true because the statute fixing our rules of inheritance must be construed in pari materia with our adoption statute. *Alexander* v. *Lamar*, 190 *Ga.* 656 (10 S. E. 2d, 42). A similar situation exists as to our statute providing for a year's support to the widow and minor children of a deceased husband and father. Code, § 113-1002, as amended by the act of 1939 (Ga. L. 1939, p. 236). Yet it was held in *Pierce* v. *Harrison*, 199 *Ga.* 197, 198 (3) (33 S. E. 2d, 680) that, "Where, after the death of the grandfather, his equity in a de-

scribed tract of land was set apart to his widow (alone) as a year's support, she acquired no greater interest than her husband had therein; and, if the petitioner did in fact occupy the relation of a virtually adopted child as alleged, the widow took the year's support subject to his equitable rights as such virtually adopted child; and purchasers, holding under her with knowledge of such rights, would in like manner take subject thereto. Accordingly, upon establishment of these facts and virtual adoption as alleged, the petitioner would be entitled to a decree that the year's support was void so far as his rights as a virtually adopted child were concerned." In construing a statute, certain presumptions must be indulged. In 59 C. J. 1038, § 616, it is stated: "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, . . and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts." See *Botts* v. *Southeastern Pipeline Co.*, 190 *Ga.* 689 (10 S. E. 2d, 375). The adoption statute of our State, as amended by the act of 1949, supra, employs language as broad seemingly as could be used for the legislative purpose of placing an adopted child upon the same level as that of a natural child of lawful birth, in all respects; and in our opinion it was the legislature's intention by the enactment of our adoption law to create a relation between the adopting parent and the adopted child precisely equivalent, in law, to the relation of parent and child as created by natural and lawful birth. And since birth by law and birth by nature are by our amended adoption statute now treated and considered the same in all respects, it follows as a necessary consequence that the trial judge, in the case at bar, erred in sustaining the propounder's motion to strike the objectors' caveat; and in probating the will involved.

*Judgment reversed. All the Justices concur, except Duckworth, C.J., who dissents.*

DUCKWORTH, Chief Justice, dissenting. By Code § 113-106 any person is empowered to dispose of his property by a will, provided only that such disposition is consistent with the laws and

policy of the State. The only law of this State purporting to restrict this power is that found in Code § 113-408, which provides that a subsequent marriage of the testator or the birth of a child to him when there is no provision in the will, made in contemplation "of such an event," shall be a revocation of the will. It is quite important that a clear understanding of precisely what, under this last section, revokes the will. It is an event and not a person or some right of such person or persons. The mere fact of marriage or birth is sufficient to revoke it the moment such event occurs. The immediate death of the spouse or child after the event occurs would in no wise prevent revocation, although such death would destroy any possibility of inheritance by the spouse or child. These observations, it seems to me, make it plain beyond question that the Code sections referred to are confined solely to the question of the right of a person to make a will. They neither deal with nor have any relation to the law of inheritance as provided by the statute of distribution and the law of adoption.

The amendment of the adoption law (Ga. L. 1949, pp. 1157, 1158) does not even purport to amend or alter the foregoing law to make a will but expressly states that its purpose is to amend the 1941 adoption act (Ga. L. 1941, p. 305) and, by its terms, it deals solely with rights of the adopted child. Since it does not purport to amend Code §§ 113-106 and 113-408, the constitutional requirements as to express amendments found in Code (Ann.) § 2-1916, art. 3, sec. 7, par. 14, Constitution of Georgia; Ga. L. 1945, p. 24) have no application; but if it is to be given the effect attributed to it by the majority opinion, then it becomes an amendment of those Code sections by implication. Laws may be repealed by implication; and if the term, "birth of a child to him," found in Code § 113-408, is to include the adopted child, as ruled by the majority, then that much of the Code section is, by this amendment, repealed and, in lieu thereof, are inserted, in substance, the words, "the birth of a child to him or the legal adoption of a child by him." It is the established rule of construction that, before repeal by implication will occur, the later act must be repugnant to and irreconcilable with the former law. If the two will bear a construction that avoids repugnancy, then the former law is not

changed by the later act. *State Board of Education* v. *Richmond County Board of Education*, 190 *Ga.* 588 (10 S. E. 2d, 369); *Thornton* v. *McElroy*, 193 *Ga.* 859 (20 S. E. 2d, 254); *Thomas* v. *Board of Commissioners of Chattooga County*, 196 *Ga.* 10 (25 S. E. 2d, 647); *Connor* v. *O'Brien*, 198 *Ga.* 221 (31 S. E. 2d, 399). To me it is perfectly clear that the two laws deal with entirely different subject matters, are readily reconcilable with each other, and neither is affected by the other. Therefore the older law should stand as it existed before the 1949 act, unaffected and unchanged by that act. Had the General Assembly desired to accomplish the result which flows from the majority opinion, they could have done so and, under established rules of construction, must have done so by the enactment of a law dealing with the subject of the right to make a will, and simply provided that the subsequent coming into existence of a person who, under the laws of distribution and inheritance would be an heir, would revoke the previous will.

I would quite readily agree that it would be right and just to provide by law that the adoption of a child would have the same effect as marriage or the birth of a child, but that should be done by plain law enacted by the sole law-making body of the State. The virtue or desirability of such a law is no justification for obtaining it by tortured construction contrary to established rules to guide construction. The majority opinion will become the law of the land, and this opinion will neither affect the rights of these parties nor change the law as fixed by the majority, but it does give recognition to rules of construction upon which we must depend in the future. For the foregoing reasons I would affirm the judgment of the trial court.