156 So.2d 558 (1963)
In re ESTATE of Arthur C. FRIZZELL, a/k/a A.C. Frizzell, Deceased.
Arthur Paul FRIZZELL et al., Appellants,
v.
FIRST NATIONAL BANK IN FORT MYERS, a corporation, as Executor of the Estate of Arthur C. Frizzell, deceased, Patti Lee Frizzell and Dorothy Carey Frizzell, Appellees.
No. 3573.
District Court of Appeal of Florida. Second District.
September 4, 1963.
Rehearing Denied October 15, 1963.
Leroy Hill, Punta Gorda, T. Paine Kelly, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellants.
Leo Wotitzky, of Wotitzky, Wotitzky & Conrad, Punta Gorda, for appellee First Nat. Bank in Fort Myers.
W.A. Sheppard, of Sheppard & Woolslair, Fort Myers, for appellee Dorothy Carey Frizzell.
Edwin O. Simon of Redfearn & Simon, Miami, for appellee Elwood P. Safron, as guardian ad litem for appellee Patti Lee Frizzell.
ALLEN, Acting Chief Judge.
This appeal is from an order in probate declaring that appellee, Patti Lee Frizzell, is a pretermitted child of A.C. Frizzell, deceased, within the meaning of § 731.11, Florida Statutes, F.S.A. The appellants are beneficiaries named in decedent's will. The appellees, the executor and decedent's wife as well as Patti Lee Frizzell, answering by separate briefs favor the ruling of the County Judge.
We pause here to comment upon the able opinion of the County Judge in this case and also thank all counsel for the well prepared briefs filed on behalf of both the appellants and the appellees.
Arthur C. Frizzell died at his home in Charlotte County, Florida, on January 6, 1961. Survivors included his wife, appellee Dorothy Carey Frizzell, an adult adopted son, Arthur Paul Frizzell, appellant herein, and an adopted infant daughter, Patti Lee Frizzell. The infant adopted child was born prior to and adopted after execution of decedent's will and codicil thereto.
Decedent's Last Will was executed on February 15, 1960, and a Codicil was executed on July 9, 1960, changing the Executor and Trustee from Exchange National Bank in Tampa to First National Bank in Fort Myers. Decedent and his wife formally adopted Patti Lee Frizzell on October 10, 1960, and decedent's Will was never revised to provide for her. On the other hand, the Will did not show any intention of omitting any provision for her.
The main point on appeal is one of first impression in Florida and is "whether a child adopted after the execution of a Will is a pretermitted child and would take a *559 child's part within the meaning of Section 731.11, Florida Statutes."
Contained in the record-on-appeal is a certificate, signed by the County Judge, to this effect:
"A. That the status of Patti Lee Frizzell, the adopted infant daughter of the above named decedent, could and should be adjudicated upon the said petitions and the pleadings filed in response thereto;
* * * * * *
"C. That taking of testimony to determine the status of Patti Lee Frizzell was unnecessary because the facts were * * * in the pleadings and the record and there was no controversy as to any material fact; so that the Court was not called upon to hold, and did not hold testimony to be inadmissible on the issue then before the Court."
Accordingly, the issue here is limited to the question whether, as a matter of law, the protection of Section 731.11 extends to an adopted child.
Section 731.11, Florida Statutes, F.S.A., provides:
"When a testator omits to provide in his will for any of his children born after the making of the will and such child has not had bestowed upon him by way of advancement a portion of the testator's property equivalent to a child's part, unless it appears from the will that such omission was intentional, such child shall receive a share in the estate of the testator equal in value to that which he would have received if the testator had died intestate. The share of the estate which is assigned to such pretermitted child shall be raised in accordance with the order of appropriation of assets set forth in this law."
Section 731.30, Florida Statutes, F.S.A., provides:
"An adopted child, whether adopted under the laws of Florida or of any other state or country, shall be an heir at law, and for the purpose of inheritance, shall be regarded as a lineal descendant of his adopting parents, and the adopting parents shall inherit from the adopted child. The adopted child shall be regarded as the natural brother or sister of the natural children and other adopted children of the adopting parents for the purpose of inheritance from or by them. The adopted child shall inherit the estate of his blood parents, but his blood parents shall not inherit from the adopted child."
Section 72.22, Florida Statutes, F.S.A., provides:
"By the decree of adoption the child shall be the child and legal heir of the adopting parent or parents, entitled to all the rights and privileges, and subject to all obligations, of a child born to such parent or parents in lawful wedlock. The natural parents of such adopted child, if living, shall, after the adoption, be relieved of all legal duties and obligations due from them to such child, and shall be divested of all rights with respect to such child; provided, when the adopting parent is married to one of the natural parents of such child, or thereafter inter-marries with one of such natural parents, then the relation of such child toward such natural parents shall be in no way altered by the adoption; provided further, that when an adopted child has been subsequently adopted by some third party or readopted by his natural parents or one of them, that such adopted child shall not inherit from an adopted parent when he has been subsequently adopted by another or by his natural parents or one of them, in the absence of some evidence in writing that such adopting parent considered such child his child for the purposes of inheritance, notwithstanding the subsequent adoption and provided further that nothing in this law shall be construed *560 to prevent a legally adopted child from inheriting from the natural parents under the laws of this state or any state."
In the case of Tsilidis v. Pedakis, Fla. App. 1961, 132 So.2d 9, Judge Sturgis of the First District Court of Appeal, held that the statute authorizing an adult married couple, or the survivor, to adopt another adult implies that the adoption of an adult by a person who had never married was repugnant to Florida law or policy, and, therefore, the adopted adult could not, under Florida law, be the pretermitted heir to an estate. The appellant in that case claimed that he was entitled under Section 731.11, Florida Statutes, F.S.A., to inherit the estate of Constantine Prassas, deceased, claiming thus to be the pretermitted child by reason of his adoption in Greece. Prassas, who had never married, died after the decree of adoption was entered, leaving an estate of inheritance in Florida and a will that was executed prior to the entry of the foreign decree of adoption. The statute deemed controlling, Fla. Stat. § 72.34, (1959) F.S.A. provides:
"Any adult married couple, or the survivor thereof, residing in the state and wishing to adopt another adult, may apply by petition in chancery to the judge of the circuit court for the circuit in which such adopters may reside, for permission to adopt another adult, whether married or single, provided, however, that said adopters are more than ten (10) years older than the adoptee."
Judge Sturgis, in his opinion, stated:
"* * * At first blush it would appear that F.S. § 731.30, F.S.A. brings appellant within the purview of F.S. § 731.11, F.S.A., but careful analysis discloses that this is not so.
* * * * * *
"The provisions of Chapter 72, Florida Statutes, F.S.A., relating to adoption of adults, are in derogation of the common law and must be strictly construed. The very fact that the legislature restricts the right to adopt an adult to a `married couple, or the survivor thereof' (F.S. § 72.34, F.S.A., supra), establishes by exclusion the right of a single person to adopt an adult and implies that such is repugnant to the laws and policy of this state. We need proceed no further than the clear limitation of the statute in holding that the appellant is not entitled under the laws of Florida to share in the estate of Constantine Prassas."
Thus, the observation, above quoted, concerning Fla. Stat. §§ 731.11, and 731.30, F.S.A., was dictum and a decision on the point was never reached. Similarly, decisions concerning § 731.30 including this court's recent decision that the adoption statute would not cut off an adopted child's right to inherit from his collateral blood kindred, In re Levy's Estate, Fla.App. 1962, 141 So.2d 803, and the decision of the Supreme Court of Florida in the case of In re Hewett's Estate, 1943, 153 Fla. 137, 13 So.2d 904, holding that an adopted child could not inherit from a collateral relative of an adoptive parent, do not reach the question here involved.
As we have stated above, no Florida decision has decided the question now before this court. However, numerous decisions on this question have been rendered by the courts of our sister states and the subject has been considered by the text writers.
Atkinson on Wills, 2d Ed., Hornbook Series, page 430, states:
"Whether the adoption of a child is attended with the same consequences as the birth of issue depends to some extent upon the language of the statutes respecting revocation of wills and the adoption of children. Some decisions have held that the adoption of a child does not meet the legislative requirement of birth of issue. Most modern authorities declare that adoption of a *561 child has the same effect as natural birth,[56] being influenced by the terms of the adoption statutes declaring that adopted children shall have the full rights of children by birth. From a technical standpoint the cases could generally have been decided either way; the majority view is no doubt influenced by a judicial policy favoring the institution of adoption."
Under footnote 56 of the above paragraph the following cases appear as favorable to the adopted child:
"Thornton v. Anderson, 207 Ga. 714, 64 S.E.2d 186, 24 A.L.R.2d 1079, 1951; Hilpire v. Claude, 109 Iowa 159, 80 N.W. 332, 46 L.R.A. 171, 77 Am.St.Rep. 524, 1899; Dreyer v. Schrick, 105 Kan. 495, 185 P. 30, 1919, noted, 33 Harv.L.R. 724; In re Rendell's Estate, 244 Mich. 197, 221 N.W. 116, 1928, noted 27 Mich.L.R. 357; Remmers v. Remmers, 239 S.W. 509, Mo., 1922; In re Book's Will, 90 N.J. Eq. 549, 107 A. 435, 1919; Bourne v. Dorney, 184 App.Div. 476, 171 N.Y.S. 264, 1918; Surman v. Surman, 21 Ohio App. 434, 153 N.E. 873; 1916; In re Hebb's Estate, 134 Wash. 424, 235 P. 974, 1925. See Fulton Trust Co. v. Trobridge [Trowbridge], 126 Conn. 369, 11 A.2d 393, 127 A.L.R. 747, 1940. * * *"
Under the same footnote the following cases appear as contra:
"Davis v. Fogle, 124 Ind. 41, 23 N.E. 860, 7 L.R.A. 485, 1890; Succession of Carre, 212 La. 839, 33 So.2d 655, 1948, noted, 22 Tulane L.R. 661; In re Boyd's Estate, 270 Pa. 504, 113 A. 691, 1921. See Evans, Testamentary Revocation by Adoption of a Child, 22 Ky.L.J. 600."
1 Redfearn, Wills and Administration of Estates in Florida, 3d Ed., pp. 146, 147, states:
"The birth of a living posthumous child has the same effect as the birth of issue prior to the death of the testator. The adoption of a child apparently would not have the same effect as the birth of a child. As to such adopted child Florida statutes provide: `An adopted child, whether adopted under the laws of Florida or of any other state or country, shall be an heir at law, and, for the purpose of inheritance, shall be regarded as a lineal descendant of his adopting parents, and the adopting parents shall inherit from the adopted child. The adopted child shall be regarded as the natural brother or sister of the natural children and other adopted children of the adopting parents for the purpose of inheritance from or by them. Such adopted child shall inherit the estate of his blood parents, but such blood parents shall not inherit from such adopted child.'
"In this section apparently it was not the intention of the legislature to give an adopted child the same rights in a testate estate as were given to a pretermitted child. However, this is immaterial now, for the legislature in 1943 provided that an adopted child shall be entitled to all the rights and privileges and subject to all the obligations of a child born in lawful wedlock."
The various views of other jurisdictions are concisely set forth in 2 Am.Jur.2d § 112, p. 954, as follows:
"§ 112. Effect of adoption as revoking previously executed will; rights of adopted child as affected by will.
"In most jurisdictions, statutes have been enacted to protect rights of children born to a testator after the execution of his will which will permit the child to share in the parent's estate if he dies without later providing for the afterborn child. Under some statutes birth after execution of a will after the death of the testator revokes the previously executed will, or renders it void, and the use of broad language in some statutes concerning status of adopted children as being equal in all *562 respects to that of natural children, including equal rights of descent, inheritance, and distribution, has led the courts to the extension to the adopted child of the principle that the birth of the child revokes an antecedent will making no provision for after-born children. Other courts take the view that subsequent adoption of a child does not have the effect of revoking the antecedent will of his adopting parents.
"The more usual form of statutes protecting after-born and pretermitted children renders the previously executed will inoperative as to such children, giving them the right to share in the estate of the decedent as if he had died intestate, and in most cases where the question has arisen, the courts have held that a child adopted after the making of a will and who is unprovided for in the will, comes within the provisions of the statutes for after-born and pretermitted children and is entitled to the protection and benefit of those provisions. In view of the letter and spirit of the adoption statutes, it is held that an adopted child comes within the protection and benefit of wills statutes preventing the cutting off from the testator's bounty of children `born' or `issue' begotten after the execution of the will from which such children were omitted. But other courts taking a less liberal view have denied the right of an adopted child to the benefit of statutes giving after-born issue the right to share in the decedent's estate.
"The question whether a testator has provided for, or contemplated the contingency of, the future adoption of a child so as to prevent partial revocation or a partially inoperative effect of the will when a child is subsequently adopted, is largely a matter of determining the intention of the testator as drawn from the language of the will and the circumstances surrounding its execution."
In 105 A.L.R. 1177, it is stated in the Annotation:
"Statutes generally protecting the rights of pretermitted children and children born after the execution of a will by the parent have usually, although not without exception, been liberally construed, in connection with adoption statutes, in favor of adopted children, as will be seen from a review of the cases herein.
"In a number of cases, sufficient in number and quality to be designated as the weight of authority, it has been held that, in view of the letter and spirit of the adoption statutes, an adopted child comes within the protection and benefit of those provisions of the wills statutes preventing the cutting off from the testator's bounty of children `born' or `issue' begotten after the execution of the will from which such children were omitted.
"Thus, it has been held that the adoption of a child after the execution of a will brings the child within the benefits of a statute providing that on the birth of a child after the making of a will, unless an intention to disinherit it shall appear from the will, the devises and legacies shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of testator had he died intestate, where, also, by statute, an adopted child, for the purpose of inheritance, is declared to be in law the child of the parents the same as if he had been born to them in lawful wedlock. Flannigan v. Howard (1902) 200 Ill. 396, 65 N.E. 782, 59 L.R.A. 664, 93 Am.St.Rep. 201. See to the same effect, Hopkins v. Gifford (1923) 309 Ill. 363, 141 N.E. 178; [In] re Rendell['s Estate] (1928) 244 Mich. 197, 221 N.W. 116."
In Van Brocklin v. Wood, 1905, 38 Wash. 384, 80 P. 530, the testator had executed a *563 will after adopting a child, in which the child was neither named nor provided for. The court held that the child was included within the terms of the Wills statute providing that if a testator dies, leaving a child or children or descendants of such child or children, not named or provided for in such will, "although born after the making of such will" or the death of the testator, every such testator, so far as regards such child or children or their descendants shall be deemed to die intestate, and such child or children, or their descendants, shall be entitled to such proportion of the estate of the testator as if he had died intestate. The court's decision turned on the fact that under a statute relating to adoption, passed some twenty years subsequently to the Wills statute, it was expressly stated therein that an adopted child "shall be to all intents and purposes the child and legal heir of his or her adopter, * * * entitled to all the rights and privileges * * * of the child of the adopter or adopters begotten in lawful wedlock." The Court said in the above case:
"Appellants contend that the words `although born after making of such will' show an intention of the Legislature to refer to natural children only. This statute was passed some 20 years before the adoption statute above quoted, and, even if the legislature then intended it to apply to natural-born children, we think that adopted children, who are given all the rights of natural-born children under the later statute, should be held to be included within its terms."
To like effect see Sandon v. Sandon, 1905, 123 Wis. 603, 101 N.W. 1089; In re McLean's Estate, 1935, 219 Wis. 222, 262 N.W. 707; Hilpire v. Claude, 1899, 109 Iowa 159, 80 N.W. 332, 46 LRA 171, 77 Am.St.Rep. 524; Bourne v. Dorney, 1918, 184 App.Div. 476, 171 N.Y.S. 264 (judgment affirmed without opinion in 1919, 227 N.Y. 641, 126 N.E. 901).
In re Alter's Will, 1921, 92 N.J. Eq. 415, 112 A. 483, where a child was adopted after the execution of the Will of his adoptive mother, the Court held that in view of a statute providing that "every last will and testament made when the testator had no issue living, wherein any issue he might have is not provided for or mentioned, if at the time of his death he leaves a child, children, or issue, or leave his wife enceinte of a child or children which shall be born, such will shall be void, and such testator be deemed to die intestate," the adopted child of the testatrix was entitled to the protection of his rights of inheritance in her real estate, and in the distribution of her personal estate under this statute, as fully and completely as if he were the issue of her marriage, born after the making of her will. The Court noted that, as pointed out in In re Book's Will, 1919, 90 N.J. Eq. 549, 107 A. 435, the effect of the provision of the act concerning the adoption of minors is to clothe the adopted child with all the rights of a natural child, so far as inheritance of real estate or the distribution of personal estate is concerned.
The Supreme Court of Kansas in Dreyer v. Schrick, 1919, 105 Kan. 495, 185 P. 30, held that the subsequent adoption of a child was the legal equivalent of the subsequent birth of a child within the meaning of a statute providing that when a testator who shall, after the execution of the will, have a child who is not provided for in the will, "the child born" after the execution of the will shall take the same share of the estate that it would have been entitled to if the testator had died intestate. In reaching this decision the Court considered the effect of a statute providing that "[m]inor children adopted as aforesaid shall * * * be entitled to the same rights of person and property as children or heirs at law of the persons thus adopting them." To the same effect see Fishburne v. Fishburne, 1934, 171 S.C. 408, 172 S.E. 426; Bakke v. Bakke, 1928, 175 Minn. 193, 220 N.W. 601; Odenbreit v. Utheim, 1915, 131 Minn. 56, 154 N.W. 741, L.R.A. 1916D, 421.
The Supreme Court of Missouri, in Thomas v. Maloney, 1910, 142 Mo. App. 193, *564 126 S.W. 522, held that a statutory deed of adoption conferred on an adopted child the status of an issue of the bodies of the adoptive parents, that the failure to mention an adopted child in the will gave the child all the rights given by law to a pretermitted heir (the same as if she were a natural-born child), so that she might obtain her share of the estate if a natural-born child could do so under like circumstances. It further stated that a contract to adopt carried the incidental right of heirship, which, in the case of a natural child, may be cut off only by the will of the adoptive parent in which the adopted child is mentioned.
In re Hebb's Estate, 1925, 134 Wash. 424, 235 P. 974, the Supreme Court held that an adopted child was a "descendant" of his adoptive father within the meaning of a statute providing that if a person made his last will and died leaving a child or children or "descendants of such child or children not named or provided for in the will," then such child or children or their descendants should take as though he died intestate, in view of a section of the adoption statute providing that by the order of adoption "the natural parents shall be divested of all legal rights and obligations in respect of such child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them, and shall be, to all intents and purposes, the child and legal heir of his or her adopter or adopters, entitled to all rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock."
In Thornton v. Anderson, 1951, 207 Ga. 714, 64 S.E.2d 186, 24 A.L.R.2d 1079, the Georgia Supreme Court held that under the Georgia adoption and inheritance statutes, the will in the case was revoked by the adoption of the child. The facts, as set forth in the opinion by Mr. Justice Candler, were as follows:
Mrs. Thornton executed her will on December 15, 1938. Subsequently she and her husband, on September 24, 1949, legally adopted a minor child, Mary Rebecca Thornton. Mrs. Thornton's will made no provision in contemplation of that adopting event. The testatrix died March 8, 1950. The executrix, after first probating the will in common form, offered it for probate in solemn form. A caveat was filed alleging that the paper offered as Mrs. Thornton's will should not be probated as such because it had been impliedly revoked by the adoption of Mary Rebecca Thornton subsequent to its execution. The parties stipulated that the will was valid and should be probated in solemn form unless it was revoked by the subsequent adoption of Mary Rebecca Thornton by the testatrix and her husband. The lower court ruled against the adopted daughter and appeal was taken to the Supreme Court of Georgia. That Court, in its opinion, said:
"Primarily, two statutes of this State must be examined for their bearing on the question presented for decision, which is: whether or not the adoption of a child under the statutes of this State operates to revoke by implication or inference of law an antecedent will of the adopting mother in which no provision was made in contemplation of that adopting event. One of these statutes is an act of the legislature, approved February 25, 1949, effective six months thereafter, Ga.L. 1949, p. 1157, amending a section of our adoption act of 1941, Ga.L. 1941, p. 305, the material portion of which amending act of 1949 is as follows: `said adopted child shall be considered in all respects as if it were a child of natural bodily issue of petitioner or petitioners, and shall enjoy every right and privilege of a natural child of petitioner or petitioners; and shall be deemed a natural child of petitioner or petitioners to inherit under the laws of descent and distribution in the absence of a will and to take under the provisions of any instrument of testamentary gift, bequest, devise or legacy unless expressly excluded therefrom.' The other statute, *565 which in varying language, has existed since 1834 and is now codified as § 113-408 of the Code of 1933, declares that `In all cases, the marriage of the testator or the birth of a child to him, subsequently to the making of a will in which no provision is made in contemplation of such an event, shall be a revocation of the will.' Concerning the last statute referred to, this court in Ellis v. Darden, 86 Ga. 368, 12 S.E. 652, 653, 11 L.R.A. 51, speaking through Chief Justice Bleckley, said: `The object of the provision is to secure a specific moral influence upon the testamentary act,  the moral influence of having before the mind a contingent event so momentous as marriage or the birth of a child, and so deserving of consideration in framing a testamentary scheme.' See also Sutton v. Hancock, 115 Ga. 857, 42 S.E. 214. In 1 Am.Jur., 661, § 61, the author says: `In most jurisdictions wherein the birth of children to a testator operates as a revocation of a previously executed will, and adopted children are entitled to the same rights of inheritance as natural children, the adoption of a child is held to revoke a will previously made by the adoptive parent, though authority exists to the contrary.' * * *"
The Court, after discussing the Iowa statutes involved in Hilpire v. Claude, 109 Iowa 159, 80 N.W. 332, 335, 46 L.R.A. 171, 77 Am.St.Rep. 524, states:
"* * * In the reasoning of the Iowa court the following appears: `The reasons for the rule that subsequent birth of a legitimate child to the testator before his death operates as a revocation of his prior will apply with equal force to a subsequent adoption under a statute like ours, containing no exceptions or qualifications, and declaring that the rights, duties, and relations between the parent and child by adoption shall "in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth." While these relations and rights are statutory, and may not be enlarged beyond the plain meaning of the statute, that meaning should not be defeated by any strained construction. We conclude that it is the legislative intention to place adopted children upon the same level as children of lawful birth, in all respects.'"
The Georgia Supreme Court then referred to the case of Flannigan v. Howard, 200 Ill. 396, 65 N.E. 782, 59 L.R.A. 664, 93 Am. St.Rep. 201, stating:
"And it was said by the Supreme Court of Illinois in Flannigan v. Howard, supra: `By the plain and unambiguous language of the statute, the right of the plaintiff in error to inherit from Bridget Howard is made identical with the right of a child born to her; and when the plaintiff in error became her child by adoption, after the making of the will, the effect, in law, was precisely the same as the birth of a child to the testatrix. The argument against the rights of plaintiff in error is solely on the ground that she was not, as a matter of fact, born to the testatrix, and therefore not the sort of a child mentioned in the statute of descent. This argument would apply with equal force to other sections of the same act which provide for the descent of intestate property to children of the decedent, making no reference to children by adoption. By accepted definitions, a child is the immediate progeny of human parents, and in its natural meaning the word applies to offspring born to such parents. By the statute, however, the relation of parent and child is recognized and declared as legally existing between persons not so related by nature. The statute of descent does not in any case mention this legal relation of an adopted child and the adopting parent, but the right of the adopted child is fixed by the act providing for adoption, which creates, in law, the relation of parent and child.' * * * "
*566 The Georgia Supreme Court then stated:
"In Georgia, the rules of inheritance, as fixed by statute, use the words `child' or `children' without mentioning therein an adopted child or children. Nevertheless, in virtue of our adoption statutes, an adopted child or children take under our statute of descent as natural children of lawful birth. * * In construing a statute, certain presumptions must be indulged. In 59 C.J. 1038, § 616, it is stated: `All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, * * * and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.' See Botts v. Southeastern Pipe-Line Co., 190 Ga. 689, 10 S.E.2d 375. The adoption statute of our State, as amended by the act of 1949, supra, employs language as broad seemingly as could be used for the legislative purpose of placing an adopted child upon the same level as that of a natural child of lawful birth, in all respects; and in our opinion it was the legislature's intention by the enactment of our adoption law to create a relation between the adopting parent and the adopted child precisely equivalent, in law, to the relation of parent and child as created by natural and lawful birth. And since birth by law and birth by nature are by our amended adoption statute now treated and considered the same in all respects, it follows as a necessary consequence that the trial judge, in the case at bar, erred in sustaining the propounder's motion to strike the objectors' caveat; and in probating the will involved."
We conclude that the adoption statute and the section of the probate law concerning pretermitted children should be construed together; that the liberal and enlightened views of the text writers and the decisions of sister states' courts should be adopted and that the lower court should be affirmed.
Affirmed.
SHANNON, J., and MURPHREE, JOHN A.H., Associate Judge, concur.