[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-10433

_____

D. C. Docket No. 95-00007 CV-WLS-6

HELEN BLANCHARD, as Executrix of, and Trustee under,
the Last Will and Testament of Waldo DeLoache,
Deceased,

Plaintiff-Counter-Defendant-
Appellee,

versus

DELOACHE-POWERS, a minor Colorado resident,  et al.,

Defendants,

HELEN BLANCHARD, a Georgia resident, as Custodian of
the Interests of John Michel Whitehead DeLoache-
Powers and Russell Whitehead DeLoache-Powers under
the Last Will and Testament of Waldo DeLoache,

Defendant-Cross-Claim-Defendant-
Appellee,

LAMAR COLE, District Attorney for the Southern
Circuit, State of Georgia, et al.,

Defendant-Cross-Claimant-
Counter-Claimant,

MARY SUE GRAETZ, a Georgia resident, HAZEL POLK, a Tennessee resident, MARION COPELAND, a Florida resident, JOSEPH MARCUS HUGHES, III, a Georgia resident, Executor of, and individually as legatee under the Will of Olivia Dubberly Hughes, LIBBIE HUGHES KURINEC, a Georgia resident, JAMES DUBBERLY, a Mississippi resident, as Executor of and individually as legatee under the Will of Mary S. Dubberly, JOHN S. HUBBARD, a Georgia resident, WILLIAM B. HUBBARD, a Georgia resident, MARSHA PERKINS LAPADULA, a Florida resident, ROBERT MITCHELL PERKINS, a Maryland resident, SARAH COOK, a Georgia resident, PEARL HUBBARD NETHERY, a Georgia resident, J. DAVID MILLER,

Defendants-Cross-Claimants-
Counter-Claimants-
Appellants,

ANN K. WOOD, a Georgia resident, KATHERINE SHELOR MYERS, a Florida resident, SUSAN MARIE SHELOR, ROBERT WARREN SHELOR, a Florida resident, WALTON KILLINGSWORTH, BRUCE DANIEL DUBBERLY, a Georgia resident, as Co-Executor of, and individually as legatee under, the Will of Bruce Dubberly, SAMUEL WALTER HUBBARD, III, a Georgia resident, individually, and as beneficiary of the trust under the Will of Marjorie Whitney A. Hubbard, RANDY PERKINS SCHENERLEIN, as Executrix of, and legatee under, the Will of Joseph Alexander Perkins, STANLEY HUBBARD, a Georgia resident, CATHERYN ELIZABETH MANSON, a Florida resident, NANCY KIMMEL HAMES, DANIEL ALEXANDER HAMES, JR., a Florida resident, DAVID HAMES, a Florida resident, VICTORIA HAMES PICCIOCHI, a Florida resident, NEIL BURRELL,

Defendants-Appellants,

2

SOUTHWEST GEORGIA BANK,

> Intervenor-Defendant-Cross-
> Claimant-Counter-Claimant-
> Appellant.

————————

No. 01-11350

————————

D. C. Docket No. 95-00007 CV-WLS-6

HELEN BLANCHARD, as Executrix of, and Trustee under,
the Last Will and Testament of Waldo DeLoache,
Deceased,

> Plaintiff-Counter-Defendant-
> Appellee,

versus

DELOACHE-POWERS, a minor Colorado resident, et al.,

> Defendants,

HELEN BLANCHARD, a Georgia resident, as Custodian of
the Interests of John Michel Whitehead DeLoache-
Powers and Russell Whitehead DeLoache-Powers under
the Last Will and Testament of Waldo DeLoache,

> Defendant-Cross-Claim-Defendant-
> Appellee,

LAMAR COLE, District Attorney for the Southern
Circuit, State of Georgia, et al.,

> Defendant-Cross-Claimant-

3

Counter-Claimant,

MARY SUE GRAETZ, a Georgia resident, HAZEL POLK, a
Tennessee resident, MARION COPELAND, a Florida
resident, JOSEPH MARCUS HUGHES, III, a Georgia
resident, Executor of, and individually as legatee
under the Will of Olivia Dubberly Hughes, LIBBIE
HUGHES KURINEC, a Georgia resident, JAMES DUBBERLY,
a Mississippi resident, as Executor of and
individually as legatee under the Will of Mary S.
Dubberly, JOHN S. HUBBARD, a Georgia resident,
WILLIAM B. HUBBARD, a Georgia resident, MARSHA
PERKINS LAPADULA, a Florida resident, ROBERT MITCHELL
PERKINS, a Maryland resident, SARAH COOK, a Georgia
resident, PEARL HUBBARD NETHERY, a Georgia resident,
J. DAVID MILLER,

Defendants-Cross-Claimants-
Counter-Claimants-
Appellants,

ANN K. WOOD, a Georgia resident, KATHERINE SHELOR
MYERS, a Florida resident, SUSAN MARIE SHELOR, ROBERT
WARREN SHELOR, a Florida resident, WALTON
KILLINGSWORTH, BRUCE DANIEL DUBBERLY, a Georgia
resident, as Co-Executor of, and individually as
legatee under, the Will of Bruce Dubberly, SAMUEL
WALTER HUBBARD, III, a Georgia resident,
individually, and as beneficiary of the trust under
the Will of Marjorie Whitney A. Hubbard, RANDY
PERKINS SCHENERLEIN, as Executrix of, and legatee
under, the Will of Joseph Alexander Perkins, STANLEY
HUBBARD, a Georgia resident, CATHERYN ELIZABETH
MANSON, a Florida resident, NANCY KIMMEL HAMES,
DANIEL ALEXANDER HAMES, JR., a Florida resident,
DAVID HAMES, a Florida resident, VICTORIA HAMES
PICCIOCHI, a Florida resident, NEIL BURRELL,

4

SOUTHWEST GEORGIA BANK,

Intervenor-Defendant-Cross-Claimant-Counter-Claimant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

**(March 28, 2002)**

Before TJOFLAT and BIRCH, Circuit Judges, and GOLDBERG[*], Judge.

BIRCH, Circuit Judge:

This consolidated appeal arises out of the probate of the will of Waldo DeLoache ("Waldo"). Mary Sue Graetz, Hazel Polk, Marion Copeland, Joseph Marcus Hughes, III, Libbie Hughes Kurinec, James Dubberly, John S. Hubbard, William B. Hubbard, Marsha Perkins Lapadula, Robert Mitchell Perkins[1], Sarah Cook, Pearl Hubbard Nethery, J. David Miller, Ann K. Wood, Katherine Shelor Myers, Susan Marie Shelor, Robert Warren Shelor, Walton Killingsworth, Bruce Daniel Dubberly, Samuel Walter Hubbard, III, Randy Perkins Schenerlein, Stanley

_____

[*] Honorable Richard W. Goldberg, Judge, U.S. Court of International Trade, sitting by designation.

[1] John Todd Perkins and Robert M. Perkins, Jr. have been substituted as parties in place of Robert Mitchell Perkins.

Hubbard, Catheryn Elizabeth Manson, Nancy Kimmel Hames, Daniel Alexander Hames, Jr., David Hames, Victoria Hames Picciochi, Neil Burrell[2], and Southwest Georgia Bank[3] (hereinafter collectively referred to as "Contingent Legatees") appeal the district court's grant of summary judgment in favor of John Michel Whitehead DeLoache-Powers, Russell Whitehead DeLoache-Powers ("the Children") and Helen Blanchard, which is docketed as our case No. 01-10433. Furthermore, the Contingent Legatees appeal the district court's decision to award payment of fees for Robert L. Pennington's role as the Children's guardian ad litem ("Guardian") and for fees incurred in his role as the Children's attorney to be taken out of Waldo's estate, which is docketed as our case No. 01-11350.

The district court granted Blanchard and the Children summary judgment on the grounds that the Children have been deemed by the New York Supreme Court to be the children of Michel DeLoache ("Mickey"), and, therefore, are entitled to inherit under Waldo's will.[4] In regard to the legal fees, the district court stated that the fact that Pennington uses his legal knowledge and skills in carrying out his duties as the

---

[2] Neil Burrell has been substituted as a party in place of Christina Hames Burrell.

[3] Southwest Georgia Bank, as a successor-in-interest to the Moultrie National Bank, was not named as a defendant in the complaint, but was granted permission to intervene in the proceeding.

[4] The district court limited the issue addressed in the summary judgment motion solely to the preclusive effect of the New York judgment, but then granted summary judgment on all issues in favor of Blanchard and the Children. R4-141; R5-218.

6

Children's Guardian should not limit the fees he receives from Waldo's estate. We conclude that (1) the Children are not considered Mickey's children within the meaning of Waldo's will because they are not Mickey's biological children, nor have they been adopted by Mickey; and (2) Pennington was not entitled to payment of fees from the estate for any services rendered in his capacity as an attorney. Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion, AFFIRM the decision to pay Guardian fees out of the Estate, REVERSE as to the co-mingling of Guardian and attorney's fees, and REMAND to the district court for recalculation of Guardian fees.

## I. BACKGROUND

We state the facts in the light most favorable to the Contingent Legatees, the non-movants. Waldo died in 1959 and his will was duly probated in Georgia. Under the terms of the will, Waldo left the residue of his estate in trust to his son Mickey for his son's lifetime. In the event Mickey died without a child or children, Waldo's estate was to be divided in half, one-half to Waldo's nephews and nieces, and the other half to Moultrie National Bank, now known as the Southwest Georgia Bank, to establish a charitable trust fund.[5]

---

[5] The will provided:

> Upon the death of my son, Michel DeLoache, the rest, residue and
> remainder of my estate shall vest in the children of my son, Michel

7

Mickey was first married to Mary Brooke for 14 years. Although they sought medical help from fertility specialists, no children resulted from this marriage. R-150, Ex. at 127-128. In 1970, Mickey married Martha Whitehead ("Martha"). They, too, were unable to conceive after seeking medical treatment, and they divorced in 1979. R-150, Ex. at 129-30.

After her divorce from Mickey and while living in Vail, Colorado, Martha met ski instructor Charles Powers ("Charles"), and they began a relationship. In 1982, Martha became pregnant with Charles' child, and although she and Charles discussed marriage, they decided at that time it was not the right thing for either of them. R-150, Ex. at 799-803, 888; R-149, Ex. 9 at 2.

On numerous occasions subsequent to their divorce, Mickey asked Martha to remarry him. He suggested an "arranged" marriage and stated that it would be to her

DeLoache; provided, however, that should any of his children die without issue, the share of such deceased child shall go to and vest in the survivors of the children of my son, Michel DeLoache.
. . .
If my son should die without a child or children, or representative thereof, him surviving, then it is my will and desire, and I do so provide that one-half (½) of my remaining estate shall go to the Moultrie National Bank as a charity trust fund, the income from which shall be disposed of for charitable purposes to be selected by said Bank, and the other one-half (½) of the remainder of my estate shall go to the children of my sisters and my wife's brothers and sisters per stirpes and not per capita.
R-149, Ex.1 at 1-2.

benefit to be married to him, as far as taxes were concerned. R-150, Ex. at 24, 159-60, 262-63, 447, 797, 915. In September 1982, Martha and Mickey remarried, and in April, John Michel Whitehead DeLoache was born.[6] Mickey was named as the father on John's birth certificate.

Within a few months after John's birth, Martha informed Mickey that she wanted a divorce. In late 1983, Martha learned that she was pregnant with her second child.[7] Soon after her divorce in April, Martha married Charles on 20 July 1984.

Approximately two months later, Martha gave birth to a second child naming him Russell Whitehead Powers.

In 1987, due to a visitation and surname dispute, Mickey brought an action against Martha in New York to secure his visitation rights and to compel the use of the surname DeLoache for the Children. In 1990, the New York Supreme Court held that Mickey was the father of the Children, Martha and Charles were equitably estopped from challenging paternity of the two boys, and ordered that the Children be

---

[6] Mickey asked the identity of the father and sought assurances that he would never turn up and make any claims. R-150, Ex. at 22, 151-52. Martha said that Charles was the father and described him as a wonderful preson who came from a lovely background. R-150, Ex. at 265, 131-32, 354, 798-99.

[7] Martha continued to have sexual relations with Charles during her second marriage to Mickey. The second marriage was never consummated and the parties never lived together during it. R-150, Ex. at 509, 915; R-149, Ex.9 at 2.

known by the surname DeLoache-Powers. However, it was not established whether Mickey was the biological father of the Children.

When Mickey died in 1992, Helen Blanchard, Appellee, filed an action for interpleader in her capacity as executrix of the last will and testament of Waldo, to determine what persons were entitled to inherit from Waldo's will. Blanchard named herself as defendant in her capacity as the custodian of the Children's property. Contingent Legatees objected to Blanchard acting as the Children's representative in the litigation and requested that the court appoint a Guardian. With the agreement of the Contingent Legatees, the district court appointed Pennington, the Children's attorney, as the Children's Guardian. Pennington thereafter continued to function as the attorney for the Children, as well.

Blanchard and the Children moved for summary judgment and asserted: (1) that the law in effect at the time of Waldo's death includes non-biological issue, and therefore, includes John and Russell as the legal Children of Mickey; and (2) that pursuant to the doctrine of full faith and credit, the decision of the New York court that John and Russell are the legal Children of Mickey has full force and effect in this state, and, therefore, they are the proper and only residual legatees under Waldo's

will. Contingent Legatees argued that the Children are not Mickey's biological issue and, therefore, are not Mickey's children within the meaning of Waldo's will.[8]

The district court granted summary judgment for Blanchard and the Children finding the issue of the Children's biological origin irrelevant and concluding that non-blood related, but legally recognized, children were "children" for testamentary purposes in 1959. "[T]he words 'child or children' at the time of Waldo's death were not confined to only natural, blood relations. Instead, a testator at the time of Waldo's death was required to make such a distinction himself if he desired to exclude those who were not blood descendants." R5-218-9. Contingent Legatees argue that the district court erred by finding that the Children could take as "children" under Waldo's will, and by giving the New York order preclusive effect.[9]

Thereafter, in two orders entered on 29 April 1998 and 16 February 2001, the district court awarded more than $70,000 in fees and expenses to Pennington to be paid out of Waldo's estate. The district court granted Pennington's initial fee request of $29,665.32 in full, but later decided that his subsequent fee request of $36,316.65

---

[8] The Contingent Legatees also filed counterclaims and cross-claims against Blanchard seeking a strict and proper accounting of Waldo's estate.

[9] District attorney Miller also contends that the district court erred by failing to grant a Rule 706 motion to appoint an independent expert to conduct testing to determine paternity. We do not address this argument because the issue of whether John and Russell are Mickey's natural children was conceded for purposes of summary judgment.

required additional briefing to "differentiate between which fees were incurred in his role as Guardian Ad Litem and which fees were incurred in his role as the Children's attorney." R5-205-3.[10] It found that "the majority of the fees appear to be incurred in Mr. Pennington's role as the Children's attorney." Id. at 2. The court determined that in the instant case, the reasonable fees and expenses incurred by Pennington as both attorney and Guardian were reimbursable as Guardian fees and expenses. Contingent Legatees assert that there is no basis for awarding Pennington any fees or expenses from the interpled funds of Waldo's estate where: (1) Pennington has failed to make any showing that the Children are financially incapable of paying his fees; (2) Pennington seeks compensation for fees that the vast majority, if not all of the services, were performed in his capacity as attorney; and (3) the Children have yet to establish that they have any legitimate claim to Waldo's estate.

## II. DISCUSSION

A.    Grant of Summary Judgment

We review a district court's grant of summary judgment de novo, apply the same standard as the district court, and review all facts and reasonable inferences in the light most favorable to the nonmoving party. Allison v. McGhan Med. Corp., 184

_____

[10] Pennington also requested that the $13,040.47 paid from the trust established in favor of the Children to be paid back to the trust.

12

F.3d 1300, 1306 (11th Cir. 1999).  Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

1.    Meaning of "Child or Children" under Waldo's will

"In the construction of all wills, the court shall seek diligently for the intention of the testator and shall give effect to the same as far as it may be consistent with the rules of law." OCGA § 53-2-91.  In the absence of an express contrary intention, it is assumed that the testator intended the law on the date of his death to control the disposition of his property under his will.  Warner v. First National Bank, 251 S.E.2d 511, 513 (Ga. 1978).  Prior to 1949, "[t]he disposition of the courts [wa]s to confine and limit the word 'children' in its application, when it occur[red] in a will, to its natural import, excluding adopted children, except where the testator ha[d] clearly shown by other words that he intended to use the term in a more extensive sense." Comer v. Comer, 23 S.E.2d 420, 424 (Ga. 1942).  In 1949, Georgia statutorily amended its law to allow adopted children to take with the same rights as biological children.  Thorton v. Anderson, 64 S.E.2d 186, 190 (Ga. 1951).

The district court correctly concluded that the "[u]nder the plain language of this amendment, the previous presumptions were reversed.  A testator was no longer required to specifically note in his or her will that a bequest could also flow to non-

13

blood related children; instead, if a testator desired to limit his or her bequest to only blood-relations thereby excluding adopted children, such a provision would have to be explicit." R5-218-7. However, the district court's reasoning was flawed when it concluded that "legally recognized" children were of the same status as adopted children.

> If . . . the will uses words which have a well-settled, definite meaning in the law, and there is nothing in the will itself to indicate that it was the intention of the testator that such words should be given any other meaning than that which the law gives them, then it is to be presumed that it was the intention of the testator that the words should be construed in that sense in which the law would ordinarily construe them.

Epstein v. First Nat. Bank, 391 S.E.2d 924, 926 (Ga. 1990), (quoting Maclean v. Williams, 258, 42 S.E. 485 (Ga. 1902)).

Georgia law in 1959 reveals only two possible classes of persons who could take under a grandparent's testamentary devise to his offspring's "child or children," in the absence of other clear evidence of the testator's intentions: (1) natural, blood-related offspring, and (2) statutorily adopted children. The Children do not fall within either of theses classes, and there is nothing in Waldo's will or the record that contains any support for such a construction of Waldo's intent.[11] As the district court stated

---

[11] The district court analogizes the New York Court's equitable estoppel order to a statutory adoption decree entitling the Children to take under Waldo's will as "legally recognized children." Under New York law, an adoption can only exist if numerous statutory prerequisites are met, and cannot be legally effective unless and until an "order of adoption" is

14

"[h]ad Mickey simply intentionally wanted to ensure that the Contingent Legatees would not take under the will, he had many options: he could have adopted a child or otherwise begot his own child." R5-218-9. However, Mickey did neither, and, therefore, he did not leave a "child" or "children" within the meaning of Waldo's will.

### 2. Applying Full Faith and Credit to the New York Judgment

Although the district court stressed that its decision was based primarily on the law in effect at the time of Waldo's death, it's conclusion was plainly predicated on the New York litigation that established John and Russell as the "legally recognized children of Mickey." R5-218 at 4-10. The district court purportedly applied the Full Faith and Credit Clause to the New York judgment, which states:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions and . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory and Possessions from which they are taken.

28 U.S.C. 1738. However, it failed to address the well established law that a federal court cannot give preclusive effect to a state court order, in subsequent litigation,

---

signed. See N.Y. Dom. Rel. Law § 112 (McKinney 1989). The New York court's order did not contain any of the prerequisites for a valid adoption decree, nor is there any evidence that the Children were ever adopted by Mickey in any other forum.

without determining whether the state from which the order was rendered would give that order preclusive effect through the operation of the rendering state's law of res judicata and collateral estoppel. Shields v. BellSouth Advertising and Pub. Co., 228 F.3d 1284, 1288 (11th Cir. 2000). Under New York law, res judicata precludes re-litigation by parties and their privies of any matters that were necessarily decided in a prior action. Thomas v. New York City, 814 F.Supp. 1139, 1148 (E.D.N.Y. 1993). To establish collateral estoppel under New York law, two requirements must be satisfied: (1) "the party seeking the benefit of collateral estoppel must prove that the identical issue was necessarily decided in the prior action and is decisive in the present action;" and (2) "the party to be precluded from re-litigating. . . must have had a full and fair opportunity to contest the prior determination." D'Arata v. New York Central Mut. Fire Ins. Co., 76 N.Y.2d 659, 664 (N.Y. 1990).

The district court concluded that full faith and credit must be given to the New York court's judgment that John and Russell are the legal Children of Mickey, and that issue was precluded from being litigated again. However, the issue before this court is whether John and Russell constitute "child or children" within the meaning of Waldo's will. The New York judgment was not a filiation proceeding. It was an estoppel order that prohibited Martha and Charles from contending that Mickey was

16

not the father of the Children. The issue of paternity was not fully litigated, and therefore, the doctrine of full faith and credit is inapplicable.

Furthermore, the Contingent Legatees did not have a full and fair opportunity to litigate their interests. For a prior determination to be held against a party in a subsequent proceeding, the party must have been a party or in privity with a party to the prior proceeding. Id. at 664. New York courts have defined privity as "a mutually successive relationship of the same rights to the same property." Grataman Home Investors Corp. v. Lopez, 386 N.E.2d 1328, 1332 (N.Y. 1979). Privity also exists when there is a relationship between the litigant in the current suit and a party to the prior suit "such that the interests of the nonparty can be said to have been represented in the prior proceeding." Green v. Santa Fe Indus., 514 N.E.2d 105, 108 (N.Y. 1987).

The district found that there was no basis to conclude that the Contingent Legatees were necessary parties to the New York litigation, and as a result, the New York judgment was not subject to collateral attack. The Contingent Legatees do not contest the New York order's validity, nor do they doubt that it is binding on the parties to the New York action. Instead, the Contingent Legatees correctly argue that the New York order is not entitled to preclusive effect in this case because they did not have a full and fair opportunity to litigate their interests in the prior proceeding.

Accordingly, the Contingent Legatees were not parties nor privies to the New York litigation and, therefore, are not bound by any of the orders nor the judgment that arose from it.

B.    Award of fees

We review an award of fees for abuse of discretion; nevertheless, that standard of review still allows us to closely scrutinize questions of law decided by the district court in reaching a fee award. Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 770 (11th Cir.1991). The district court did not abuse its discretion by awarding Guardian fees to be paid from Waldo's estate. As the district court pointed out and as noted by the Contingent Legatees, the Children were necessary parties to any final judgment, and any final judgment that did not include them as litigants with adequate representation would have been in jeopardy. Furthermore, the Contingent Legatees, who now complain, were the ones who requested that the court appoint a Guardian to provide proper representation for the Children's interests in this litigation. Thus, the need for a Guardian clearly outweighs any interest in the minor depletion of the interpled estate.

We find, however, that the district court did abuse its discretion in awarding attorney fees from Waldo's estate. By statute, the award of attorney fees is allowed if the court finds that an attorney or party has brought an action that "lacked

18

substantial justification," which means it is substantially frivolous or groundless. O.C.G.A. § 9-15-14(b). The district court's justification for the award of fees was that "it was or should have been clear to all parties that since Mr. Pennington was a lawyer that there could be some blurring of Mr. Pennington's role as a guardian ad litem and lawyer. . . [and] it is unreasonable and unnecessary to attempt to split hairs . . . with regards to the guardian's arguably dual role 'in light of the parties' agreement that Mr. Pennington serve as guardian ad litem." R5-230 at 5-6. However, after reviewing the record, we find that the fees are not so intertwined that they could not be calculated separately. Moreover, a review of the services actually rendered shows that Pennington was awarded compensation not only for legal services performed on behalf of the Children, but also for legal services performed on behalf of Blanchard, Martha and Charles. Thus, we remand this matter to the district court for a computation of the fees due to be awarded Pennington for his services as Guardian, to be paid from the corpus of Waldo's estate.

## III. CONCLUSION

The district court created a new legal definition of "child or children" under Georgia law when concluded that "legally recognized" children were "children" for testamentary purposes in 1959. It based its decision on the New York judgment that found Mickey to be the father of the Children. That judgment, however, was not

entitled to be given preclusive effect. Furthermore, it was an abuse of discretion to award attorneys fees from Waldo's estate.

Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion, AFFIRM the decision to pay Guardian fees out of the Estate, REVERSE as to the co-mingling of Guardian and attorney's fees, and REMAND to the district court for recalculation of Guardian fees.